SEBRING, Justice.
The appeal is from an order granting a remittitur of a jury’s verdict from $15,000 to $5,000, or, in the alternative, requiring the plaintiff below to submit to a new trial.
Helen Briggs, the plaintiff, joined by her husband, George, prosecuted the action in which the verdict was returned to recover from Edward Fitzpatrick, as administrator cl t. a. of the estate of Laura Siler, deceased, the reasonable value of certain services rendered to the decedent, including nursing- care and control and care of the home of the decedent over a period of years before her death. The complaint alleged specifically that the services were performed at the request of the decedent during the periods of time from April, 1938, to February, 1945, from June of 1945 to May of 1946, from November, 1948, to January, 1952, and from May, 1952, until the death of her aunt, the decedent, on July 24, 1952; that the decedent “promised them that they would be paid reasonable compensation, for their services and that said monies would be left to the Plaintiff in the Will of the deceased;” and that “the plaintiff relied upon the promise of the deceased and did perform the work and services as described.”
To this complaint the defendant filed defenses in which he traversed the allega-; tions of the complaint; averred that plain-, tiff had been paid for the services rendered by being furnished shelter by the decedent during the periods of time specified; and averred that plaintiff’s claim for compensation for services rendered prior to February, 1950, were barred by the three-year statute of limitations.
*850 At the trial upon these issues, plaintiff’s ■witnesses, friends and neighbors who had itayed or visited in the Siler home during \he life of the decedent, testified to the following facts material to the issues: that, having had Helen with her with only occasional interruptions since 1938, Mrs. Siler, while residing in Miami in 1948, specifically requested that Helen sell her home in Ohio and come with her husband and daughter, Linda, to stay and care for her, and stated that “she would he very well paid if she would come;” that Helen did come and assume the full care of her ailing aunt, buying groceries, cooking meals, bathing and administering medications to Mrs. Siler, and running the household for her and other members of the family residing there; that on many occasions before and after this, time Mrs. Siler acknowledged that Helen “had done so much for her,” and stated repeatedly to others that “Helen didn’t need to be afraid, that she. would be taken care of even if she had to wait until her [Mrs. Siler’s] death.” During this same period, and continuing until shortly before her death, witnesses also reported Mrs. Siler as saying “I mean that * * *, [Helen] shall be reimbursed .for her trouble and her services for me * * * I will see. that she’s taken care of,” and “her and Linda is going to get * * * everything * * * when I go.”
The plaintiff stayed continuously in the Siler household until thé end of 1951 ■ or early part of 1952, at which"time she contracted pneumonia, and because of her illness and somé'"alleged animosity exhibited toward her by her aunt’s brother, • moved" shortly thereafter, for a temporary stay, to a neighbor’s and then to a house purchased by her and her husband in another part of the city. Although she worked at another job for' a few months after she left the household she, nevertheless, continued to visit arid givé some help to her aunt, and for at least two months prior to Mrs. Siler’s death in July, 1952, resumed full daily care of her aunt, commuting from her own family residence.
Mrs. Siler’s will; made a part of the record on this appeal, reflects that plaintiff, under its terms, did not share in the estate in any way, other than by a small bequest to the plaintiff’s daughter, Linda, of two rings of the appraised value of $175, and a provision in the'will that she and her husband might “dispose of” certain secondhand furniture in one of Mrs. Siler’s properties in Ohio of the appraised value of $272.50. The record also reflects, by testimony and exhibits, that during the period in question Mrs. Siler, at about the same time she drafted her will, executed a deed of her Miami property to the plaintiff, but that at Mrs. Siler’s request the property was subsequently reconveyed because of Bitter antagonism to the transaction on the part of Mrs". Siler’s.brother.
Upon this, evidence, and contravening evidence offered by the defendant, the trial court charged the jury that the evidence failed to establish an express contract for services up through 1946 and that any recovery for that period would not be warranted; and inasmuch as there has been no objection made to this charge by the plaintiff we need not consider it further.
In respect to compensation for services rendered subsequent to 1946, that is, from November, 1948, to January, 1952; and from May, 1952, until the death of the decedent on July 24, 1952, the trial court charged the jury, iri substance, that it was their duty to determine from the evidence whether or not a contract existed between the parties, and, if so, whether it was an express, or ■ an implied, contract; that if they found an express contract then they must determine whether or not the contract was "conditioned upon and expressly made to run to the end of the life of the deceased,” in which event they would be entitled “to allow the plaintiff recovery for that entire period that she did render such services from November, 1948, forward,” but if not so conditioned then recovery would be limited to services performed within three years prior to the date of filing suit; that if they found that the agreement between the parties did not amount to an express, but only an implied, contract, then they “would be confronted again with the statute of limitations limiting the re *851 covery for those services performed after February, 1950,” and would not be authorized to return a verdict for services rendered prior to the three-year period.
Upon the evidence and the charges the jury returned a verdict in favor of the plaintiff for $15,000, the full amount claimed in the complaint. Subsequently, on motion of the defendant, the trial court granted, in • the alternative, a new trial or remittitur in the sum of $10,000, stating as grounds for its order that “it is clear that even if there was an express contract made in 1948 by which the plaintiff Helen Briggs undertook to live with Mrs. Siler and care for her until Mrs.' Siler’s death, that contract was either unperformed, or was terminated, in December of 1951, when the Briggs moved out and Helen Briggs ceased performance of such services and never resumed them except on a partial basis about two months prior to Mrs. Siler’s death,” and consequently, “it was error to charge the jury that if they found an express contract to render services until date of death that they could award compensation on that basis back to 1948, because of the termination of the services for a period of months in 1952. The importance of that point is that such an express oral contract to perform services during the lifetime or until the death of the employer would permit recovery of compensation for the time back to 1948 without being limited by the three-year statute of limitations. Therefore, to the extent that the amount of this verdict was allowed as compensation reaching back to 1948, on a finding of an express contract to serve so long as the party lived * * * would not be justified on this record. There was no written contract. If the jury found an express oral contract for such services for an indefinite period or to the time of death, then recovery would be limited by the three-year statute of limitations. If the jury did not find there was an express contract, the jury could, under the Court’s charges, have found that there was an implied contract, under which the plaintiff Helen Briggs would be entitled to be compensated, ■ but there again the jury was charged that the three-year statute of limitations would be applicable [and] under that statute * * * plaintiff would be entitled to recover only for services performed subsequent to February 24, 1950. The evidence shows that Helen Briggs served Mrs. .Siler for twenty-two months after that date.” (Emphasis supplied.)
It appears to us that in its statement of the reasons for granting the new trial the trial court misconceived the nature of the contract under which the plaintiff sought recovery and the general law applicable to such contracts. As appears from the complaint filed in the cause the plaintiff did not allege a contract to render services to decedent “so long as the party lived,” for which she was to be paid reasonable value, nor did the plaintiff claim the right to recover under any such contract. What she did allege in her complaint, and support by evidence which the jury had the right to believe, was an express oral contract to perform services, when requested, during the lifetime of the decedent, for which payment was to be postponed until the death of the decedent; and it was never made to appear either by pleadings or by proof that either party to the contract contemplated uninterrupted continuity of such services as an absolute condition precedent to the plaintiff’s right to rely upon her aunt’s promise of compensation at her death.
In such a situation the law is that the period of limitations does not begin to run, in the absence of a repudiation of the contract by one of the parties, until the death of the promisor, for the reason that the debt is not due until that time. In re Shambow’s Estate, 153 Fla. 762, 15 So.2d 837. 57 Am.Jur., Wills, Sec. 182, p. 160. Annotations, 69 A.L.R. 166, 106 A.L.R. 764. Moreover, the fact that the express contract may be an. oral .rather than a written one does not affect the validity of the obligation. See Berger v. Jackson, 156 Fla. 251, 156 Fla. 768, 23 So.2d 265.
In substantiation of her theory that the obligation of the decedent was one for postponement of compensation, for whatever services might actually be required by, or rendered to, the aunt, until her death, *852 there is evidence which the jury had the right to believe that the decedent continued throughout the months immediately preceding her death to express satisfaction with ■ the plaintiff’s services and an intention that she should be compensated “when I go,” even though at that very time the plaintiff was no longer residing in the Siler home. In the face of such evidence, we can find no logical basis for an assumption that the plaintiff’s departure from the Siler household constituted an abandonment or breach of the contract existing between tjie parties, so as to terminate any rights that may have accrued to her under the contract and relegate her to a purely quantum meruit claim for services rendered for the three-year period immediately prior to the institution of suit.
When the transaction between the parties is viewed in this aspect, it is impossible to reconcile the $10,000 reduction imposed by the trial court as a condition to allowing the jury verdict to stand. While we are inclined to agree with the finding of the trial court in the order appealed from, that the “evidence and circumstances would not appear to justify full nursing salary [of $17.50 a day for the services performed],” and are not entirely at odds with the conclusion “that the record cannot properly be construed to justify compensation or authorize the allowance ■ of compensation at a rate of much, if any, in excess of $50.00 per week,” we think it plain that under our conclusion of the nature of the transaction between the parties, that was supported by the evidence which the jury had the right to believe, the.reduction of the jury verdict from $15,000 to $5,000 was not warranted.
Therefore, the order appealed from is reversed with directions that a judgment be entered in favor of the plaintiff, conditioned upon the entry of a remittitur by the plaintiff the amount of which shall be fixed by the trial court in accordance with the views expressed in this opinion.
It is so ordered.
MATHEWS, C. J., TERRELU, J., and KA'NlNER, Associate Justice, concur.