839 So.2d 720 (2003)
In re ESTATE OF Robert C. TENSFELDT, Deceased.
Robert William Tensfeldt, John Tensfeldt, and Christine Tensfeldt, Appellants,
v.
Constance M. Tensfeldt, Appellee.
Robert William Tensfeldt, John Tensfeldt, and Christine Tensfeldt, Appellants,
v.
Constance M. Tensfeldt, Appellee.
Nos. 2D01-5675, 2D01-5679.
District Court of Appeal of Florida, Second District.
January 15, 2003.
Rehearing Denied March 20, 2003.
*721 Tracy S. Carlin of Foley & Lardner, Jacksonville; and Mark J. Wolfson, Tampa, for Appellants.
Jeffrey D. Fridkin and D. Keith Wickenden of Grant, Fridkin, Pearson, Athan & Crown, P.A., Naples, for Appellee.
ALTENBERND, Judge.
In these consolidated appeals, Robert William Tensfeldt (William), John Tensfeldt (John), and Christine Tensfeldt (Christine), the children of the decedent, Robert C. Tensfeldt (Robert), appeal two orders. The first order dismissed an adversary proceeding by the children that alleged Robert C. Tensfeldt had breached a contract to make a will. The second order awarded Constance M. Tensfeldt (Constance), the surviving spouse of Robert C. Tensfeldt, an elective share of the probate estate. We reverse the order dismissing the adversary proceeding except to the extent that it dismissed count II seeking enforcement of a foreign judgment. Although that count was barred by the statute of limitations, the children's action as third-party beneficiaries for *722 breach of a contract to make a will was not barred by the statute of limitations or any doctrine of merger. We affirm the order awarding Constance Tensfeldt an elective share because she made a timely election pursuant to section 732.212, Florida Statutes (1997). We also conclude that the amount of the elective share is unaffected by, and takes precedence over, the children's claim for breach of contract to make a will, and therefore the order properly calculated the disbursement of the elective share.
Robert and Ruth Tensfeldt were married for more than thirty years. They had three children: William, John, and Christine. Robert and Ruth Tensfeldt divorced in Wisconsin in 1974. The judgment of dissolution incorporated a settlement agreement in which Robert agreed to provide for his three adult children in his will. The settlement agreement stated that Robert "shall execute and shall hereafter keep in effect, a will leaving not less than two-thirds (2/3) of his net estate outright to the three adult children of the parties." The agreement defined the "net estate" as the "gross estate passing under his Will (or otherwise, upon the occasion of his death) less funeral and burial expenses, administration fees and expenses, debts and claims against the estate, and Federal and State taxes." The children were not parties to the Wisconsin divorce proceeding and did not sign the settlement agreement. They were, however, expressly identified as third-party beneficiaries in this agreement. See Lowry v. Lowry, 463 So.2d 540 (Fla. 2d DCA 1985) (holding children were third-party beneficiaries of stipulation in divorce decree which required father to maintain life insurance policies for benefit of his first children).
In 1975, Robert married Constance Tensfeldt. There are apparently no children from this marriage. Robert and Constance moved to Florida in 1985. In 1992, Robert executed a new will in Florida that did not comply with the 1974 settlement agreement. The new will did not disinherit his children, but it gave them lesser immediate bequests and provided for substantial assets to be placed into a marital trust for the benefit of Constance during her lifetime. It is not clear from our record whether the children knew prior to Robert's death that he had executed this will.
Robert died on April 22, 2000. In June 2000, his 1992 will was submitted for probate, and, as directed by that will, Constance and William were appointed co-personal representatives. Notice of administration was published for the first time on August 30, 2000. In November 2000, the co-personal representatives petitioned the court for an extension of time to file the inventory, and the probate court extended the time until January 31, 2001.
On November 20, 2000, William, John and Christine, and their mother, Ruth, filed a claim for the amounts owed under the settlement agreement in the divorce. On December 5, 2000, Constance, as co-personal representative of the estate, filed an objection to this claim.[1] As a result, the three children and their mother filed a timely complaint to resolve the dispute on January 3, 2001. During the pendency of that adversary proceeding, Ruth Tensfeldt died. She is no longer a party to the action or to this appeal.
In the adversary proceeding, the children alleged that Robert and Constance *723 had placed approximately $3,000,000 of Robert's property into joint ownership that gave Constance a right of survivorship. In addition, they alleged that the estate contained another $6,000,000. According to the children, all of these assets should be included in the "net estate" of Robert as defined in the divorce agreement, thus entitling them to two-thirds of the total or $6,000,000. In contrast, they estimate that they will receive approximately $1,000,000 outright under the 1992 will.[2] Count I of the complaint alleged breach of contract because Robert did not have the appropriate will in effect on the date of his death, count II sought enforcement of the Wisconsin judgment, and count III sought a constructive trust because the children anticipated that Constance would file a request for an elective share and they maintained that their $6,000,000 claim had priority over the elective share.
Constance filed a motion for summary judgment in the adversary proceeding. She argued that the children's cause of action accrued when Robert breached the divorce agreement by executing the nonconforming will in 1992. Because this occurred more than five years before the filing of the adversary proceeding, she claimed the action was barred by the statute of limitations set forth in section 95.11 (2)(b), Florida Statutes (Supp.1992). In the alternative, she argued that the contract had actually merged into the 1974 Wisconsin judgment. Thus, any action under the contract was barred by the judgment, and any action on the twenty-six-year-old judgment was barred by the statute of limitations. See § 95.11(2), Fla. Stat. (1973). Without explaining its reasoning, the probate court granted this motion for summary judgment and dismissed the adversary proceeding.
In the probate proceeding, Constance filed an election to take elective share on February 7, 2001, while the adversary proceeding was pending. Initially, neither the estate nor the children objected to the timeliness of this election. William, as co-personal representative of the estate, did file a partial objection to the election. This partial objection stated, "The undersigned do not object to the Election in its form and to Mrs. Tensfeldt's right to make such an election." Rather, the partial objection related to Constance's stated intent to obtain an elective share and to seek her interest as a beneficiary of the marital trust,[3] and the determination of whether the children's claim to two-thirds of Robert's "net estate" had priority over the elective share. In June 2001, however, the children filed a brief in support of the objection to elective share, arguing that the election was untimely.
The probate court ultimately determined that the election of elective share was timely under section 732.212, Florida Statutes (1997), because the adversary proceeding based upon the children's claim was a matter affecting the extent of the estate subject to election and extended the time for the filing of the election. The probate court entered an order authorizing a disbursement of $1,600,000 to Constance *724 as a partial distribution of elective share. Because the adversary proceeding had been dismissed, this disbursement was calculated without reference to the children's potential claim and the probate court did not consider whether the children's claim was in the nature of a creditor's claim that would take preference over the elective share. The children then appealed both the order dismissing the adversary proceeding and the order authorizing disbursement of the elective share.

I. THE ADVERSARY PROCEEDING IS NOT BARRED BY A STATUTE OF LIMITATIONS
In the adversary proceeding, the children maintained that Robert breached his written agreement to provide for them in his will. The statute of limitations on such a claim runs from the date the cause of action accrues. See § 95.031, Fla. Stat. (1999). Constance argued that the cause of action accrued in 1992, when Robert executed the nonconforming will. The children asserted that the cause of action did not accrue until Robert died without a conforming will in place. We conclude the cause of action accrued only upon Robert's death.
In Briggs v. Fitzpatrick, 79 So.2d 848 (Fla.1955), the supreme court held that a similar claim did not accrue until the death of the promisor. Briggs involved an oral agreement for nursing services in exchange for a future payment from the promisor's estate. The supreme court reasoned that the "payment" under the agreement was not due until the promisor's death, and therefore the breach occurred only upon the death. Id. at 851.
The majority rule throughout other jurisdictions appears to be that a cause of action for breach of a contract to make a will accrues at the death of the promisor if the conforming will is not in place at that time. See Battuello v. Battuello, 64 Cal. App.4th 842, 75 Cal.Rptr.2d 548 (1998); Alvarez v. Coleman, 642 So.2d 361, 375 (Miss.1994); Catching v. Lashway, 84 Or. App. 602, 735 P.2d 13, 16 (1987); Estate of Carroll, 436 N.E.2d 864, 866 (Ind.Ct.App. 1982); Rape v. Lyerly, 287 N.C. 601, 215 S.E.2d 737, 749 (1975).[4] In line with the supreme court precedent and the majority rule, we hold that a cause of action for breach of a contract requiring the promisor make a will devising a percentage of his or her estate does not accrue until the death of the promisor.
This holding also conforms to this court's precedent regarding the somewhat related claim of tortious interference with an expectancy. This court has ruled that a beneficiary does not have a vested claim for tortious interference with an expectancy until the testator's death. See Claveloux v. Bacotti, 778 So.2d 399 (Fla. 2d DCA 2001); Whalen v. Prosser, 719 So.2d 2 (Fla. 2d DCA 1998).[5] Thus, in that context, no cause of action accrues until the testator's death. Although an expectancy in that context is not typically based upon *725 a written agreement, many of the same principles underlying Claveloux and Whalen support our ruling here. As a practical matter, a testator has broad power to revise and replace a will at any time. An injunctive action prior to death ordering the testator not to change his or her will would be difficult to enforce and the relief would be difficult to craft. In this case, for example, no action seeking damages could have been brought against Robert during his lifetime because nothing in the agreement prohibited him from alienating his property prior to his death. Therefore, no damages could be calculated until his death resulted in the creation of an estate.
Constance also argues that the divorce agreement was "merged" into the final judgment of dissolution in Wisconsin. She asserts the children cannot bring any action to enforce the contract; they can only seek to enforce the judgment. We reject this argument. First, the children were not parties to any action in Wisconsin, and therefore any merger does not affect their interests as third-party beneficiaries of the divorce agreement. Cf. Diamond R. Fertilizer Co., Inc. v. Lake Packing P'ship, 743 So.2d 547 (Fla. 5th DCA 1999) (holding, in related doctrine of merger of cause of action into judgment, that merger did not apply when parties were not the same). Second, the divorce agreement specifically stated the parties' intent that the contract would not merge into the final judgment, but would survive any judgment or decree. See Alati v. Alati, 591 So.2d 679 (Fla. 4th DCA 1992) (holding similar language in settlement agreement prevented merger and therefore action for support pursuant to agreement was not barred). The divorce decree in Wisconsin may give greater recognition to the rights the children received in their parents' stipulation, but the existence of that judgment does not bar any action for breach of this written promise by the children.
We note, however, that count II of the children's complaint in the adversary proceeding was properly dismissed. This count perfunctorily sought "enforcement" of the Wisconsin judgment. Because the Wisconsin decree is a foreign decree, never domesticated in Florida, the statute of limitations barred any action to enforce the decree in this state. See § 95.11(2), Fla. Stat. (1973); Winland v. Winland. 416 So.2d 520 (Fla. 2d DCA 1982).[6] Therefore, we affirm the dismissal of the adversary proceeding only as it relates to count II of the complaint for enforcement of the Wisconsin divorce decree. Because counts I and III of the adversary proceeding are not barred by the statute of limitations or any doctrine of merger, we remand for further proceedings on those counts.

II. THE ELECTION OF ELECTIVE SHARE WAS TIMELY
In the second of these consolidated appeals, the children assert that Constance is not entitled to claim an elective share of Robert's estate because her election to take elective share was untimely. At the outset of our analysis, we note that the statutes regulating the timing of this election have been substantially revised since Robert's death. This case is controlled by section 732.212, Florida Statutes (1997).
*726 In 1999, before Robert's death, the legislature substantially amended provisions regarding the elective share. See ch. 99-343, Laws of Fla. Those amendments replaced section 732.212 with section 732.2135, Florida Statutes (2001). However, the legislature specified that those amendments applied only to proceedings involving deaths after October 1, 2001. Ch. 99-343, § 13, Laws of Fla. If the new statute were applicable, the election in this case would be timely.
Section 732.212 provides:
The election shall be filed within 4 months from the date of the first publication of notice of administration, but, if a proceeding occurs involving the construction, admission to probate, or validity of the will or on any other matter affecting the estate whereby the complete extent of the estate subject to the elective share may be in doubt, the surviving spouse shall have 40 days from the date of termination of all the proceedings in which to elect.
The election in this case was filed more than four months after the first publication of the notice of administration. Thus, it is timely only if the period is extended by a "proceeding ... on any matter affecting the estate whereby the complete extent of the estate subject to the elective share may be in doubt." The statute does not define "proceeding" nor specify when a proceeding "occurs."
Certainly, the children's claim for two-thirds of the estate and their position that this claim has priority over the elective share is a claim affecting the estate for purposes of this statute. The children argue that the election is untimely because they did not formally file the complaint in the adversary proceeding until January 3, 2001, a few days after the expiration of the four-month period for claiming an elective share commenced by the notice of administration. Thus, the children's argument is predicated on the fact that they delayed their own action until the final days of the period in which to file an adversary proceeding.
The children cite Loewy v. Green (In re Estate of Loewy), 638 So.2d 144 (Fla. 4th DCA 1994), in support of their argument that the election was untimely. In Loewy, the surviving spouse filed a "petition for construction of the will" after the expiration of the four-month period. Although that petition was dismissed as legally insufficient, the spouse asserted it "reopened" the time period for seeking an elective share. The Fourth District disagreed, holding, "[W]e cannot read the statute to reach such an absurd result that would effectively nullify the legislative effort to impose finality on proceedings." Id. at 145.
Loewy is distinguishable. In this case, the children, not the surviving spouse, placed in controversy the extent of the estate subject to the elective share. Moreover, that controversy commenced when the children filed a statement of claim, within the four-month period during which an election could be made. Given the amounts in controversy, it was clear that the children were proceeding with their claim, and the children's adversary proceeding reflected their assumption that Constance would seek an elective share.
The specific question in this case is when a "proceeding occurs" under section 732.212. We have found no case squarely addressing this issue and we recognize that the amendments to the statutes will limit any precedential effect of this case. We conclude, however, that the probate court had the authority in this case to decide that the proceeding had "occurred" by the time the estate filed an objection to the children's claim. Such an interpretation of the statute appears consistent with the intent of the statutory provision allowing extensions when the extent of the estate *727 is in question and is also consistent with Florida's strong public policy favoring protection of the surviving spouse. See Via v. Putnam, 656 So.2d 460, 464 (Fla. 1995).
Although we reverse the summary judgment in the adversary proceeding, thus permitting the children to pursue their action for breach of contract, and remand for further proceedings, this decision does not require reversal of the order distributing $1,600,000 to Constance. The children's breach-of-contract action seeks a remedy equivalent to that which they would have received if they were beneficiaries to the will and entitled to receive two-thirds of the net estate. Although the children seek to describe their claim as a creditor's claim that would take precedence over the elective share, see § 733.707, Fla. Stat. (2000), the Florida Supreme Court has held otherwise. Via, 656 So.2d 460. Had the children been properly listed as beneficiaries in the will, Constance's elective share would have taken precedence over their bequest. The children are not entitled to receive, as creditors, a remedy superior to that which they would have received if their father had complied with the 1974 agreement.
Accordingly, we affirm the orders on appeal in the probate proceeding that relate to the elective share. We reverse the order dismissing the adversary proceeding, except to the extent that it dismisses count II of that proceeding, and we remand the adversary proceeding for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
FULMER and COVINGTON, JJ., Concur.
NOTES
[1] The co-personal representatives obviously are making conflicting claims against the estate in their personal capacities. This created some difficulties for the attorney representing the estate. The parties have apparently resolved this conflict, and it creates no issue on appeal.
[2] The exact value of the children's inheritance under the will is difficult to calculate because, in addition to their outright distributions upon Robert's death, they are the beneficiaries of a substantial portion of the marital trust after Constance's death. The value of that bequest will depend upon how long Constance lives, the amount of income she receives from the trust during her lifetime, and whether she is permitted to take any principal distributions.
[3] See Bravo v. Sauter, 727 So.2d 1103 (Fla. 4th DCA 1999) (holding surviving spouse's election to take elective share did not negate her right to income from remaining assets of estate which poured over into inter vivos trust).
[4] There are cases in other jurisdictions permitting an action for breach of a contract to make a testamentary devise during the lifetime of the promisor, or holding that such a cause of action accrued during the promisor's lifetime. However, those cases often involve a promise to devise a specific piece of property and a clear repudiation of that promise when the specific piece of property is conveyed to a third party, making performance by the promisor impossible. See, e.g., Somerville v. Epps, 36 Conn.Supp. 323, 419 A.2d 909, 911 (1980); Engelbrecht v. Herrington, 101 Kan. 720, 172 P. 715 (1917). That is not the issue presented here, where Robert instead agreed to devise a percentage of his net estate.
[5] See also Reed v. Fain, 122 So.2d 322 (Fla. 2d DCA 1960), aff'd on other grounds, 145 So.2d 858 (Fla.1961) (noting that daughter's expectancy in her father's homestead did not become vested until father died).
[6] We have some question as to whether the principles applied to traditional money judgments to bar enforcement due to a statute of limitations also apply to judgments with executory provisions. This is not a traditional money judgment. In this case, the judgment required future performance of certain obligations. It seems odd that a statute of limitations could bar enforcement of such executory provisions even before the date on which performance was required. However, Winland v. Winland. 416 So.2d 520 (Fla. 2d DCA 1982), involved a similar judgment and we are bound by its holding.