Robert William TENSFELDT, John F. Tensfeldt and Christine L. Tensfeldt, Plaintiffs-Appellants-Cross-Respondents,

v.

F. William HABERMAN, Defendant-Respondent,

Roy C. LaBudde and Michael Best & Friedrich LLP, Defendants-Respondents-Cross-Appellants.

Supreme Court

*No. 2007AP1638. Oral argument December 2, 2008. —Decided July 14, 2009.*

2009 WI 77

(Also reported in 768 N.W.2d 641.)

330

For the defendants-respondents-cross-appellants there were briefs (in the court of appeals) by *Thomas R. Schrimpf* and *Hinshaw & Culbertson LLP,* Milwaukee, and oral argument by *Thomas R. Schrimpf.*

For the plaintiffs-appellants-cross-respondents there were briefs (in the court of appeals) by *Gary M. Young* and *Law Offices of Gary M. Young,* Madison, and oral argument by *Gary M. Young.*

¶ 1. ANN WALSH BRADLEY, J. This case is before this court on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (2007–08).[1] It involves a dispute between the children of the deceased, Robert Tensfeldt, and the two attorneys who provided his estate planning services, Attorneys LaBudde and Haberman. Both the children and Attorney LaBudde appealed a circuit court order on their cross motions for summary judgment.[2]

¶ 2. Attorney LaBudde asserts that the circuit court improperly granted the children's motion for summary judgment, thereby concluding as a matter of law that LaBudde is liable for intentionally aiding and abetting his client's violation of a divorce judgment. First, he contends that he is not liable because the judgment was not enforceable. Second, he asserts that the question was fairly debatable, entitling him to qualified immunity and the good faith advice privilege.

¶ 3. We determine that the circuit court properly concluded that LaBudde is liable as a matter of law for intentionally aiding and abetting his client's unlawful act. The divorce judgment was enforceable at the time it was entered and at the time Robert asked LaBudde to draft an estate plan that violated the judgment. Under these facts, LaBudde is not entitled to either qualified immunity or the good faith advice privilege.

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[2] According to the certification memorandum, the children appeal an order of the Circuit Court for Dane County, Michael N. Nowakowski, Judge, dismissing Attorney Haberman from the lawsuit. In addition, Attorney LaBudde appeals the order granting the children's motion for summary judgment and denying LaBudde's motion for summary judgment.

¶ 4. Additionally, on the children's third-party negligence claim, LaBudde argues that the circuit court improperly denied his motion for summary judgment. We determine that the circuit court erred in denying LaBudde's motion for summary judgment because the children cannot establish that LaBudde's negligence thwarted Robert's clear intent.

¶ 5. Regarding the claim against Attorney Haberman, the Tensfeldt children assert that the circuit court erroneously granted Haberman's motion for summary judgment. They contend that Haberman is liable for negligently advising their father regarding his estate. We conclude that the circuit court did not err in granting summary judgment. Under these circumstances, Haberman is not liable to third parties for his negligent advice, and further, the children failed to present evidence sufficient to show that they were harmed by Haberman's negligent advice.

¶ 6. Accordingly, we affirm in part and reverse in part the order of the circuit court, and we remand to the circuit court for further proceedings.[3]

---

[3] On remand, we expect that there will be further proceedings on the aiding and abetting claim as well as the civil conspiracy claim.

After concluding that LaBudde was liable as a matter of law for aiding and abetting, the circuit court denied LaBudde's motion for summary judgment on the civil conspiracy claim. It remarked that LaBudde's defenses to aiding and abetting and civil conspiracy were identical, and "[f]or the same reason these arguments failed in regards to the aiding and abetting claim, they must also fail now." The court concluded that "[i]t would be possible that a reasonable jury would find from these facts that LaBudde committed civil conspiracy."

We agree with the circuit court that LaBudde's defenses to aiding and abetting and civil conspiracy are identical and that

I

¶ 7. Robert Tensfeldt and his first wife, Ruth, had three children—Christine, Robert William, and John.[4] When Robert and Ruth divorced in 1974, they entered into an agreement stipulating to various terms of the divorce. The divorce court determined that the stipulation was "fair and reasonable" and incorporated the stipulation into the divorce judgment.[5]

¶ 8. One of the terms of the stipulation provides that Robert would make and maintain a will leaving two-thirds of his net estate to the children:

> *Will in Favor of Children:* Simultaneously with the execution of this Stipulation, [Robert] shall execute and shall hereafter keep in effect, a Will leaving not less than two-thirds (2/3) of his net estate outright to the three adult children of the parties, or to their heirs by right of representation. Except as herein provided, [Robert] shall have the right to make such disposition of his estate as he may desire, except as limited herein, and further, except as limited by the requirements set forth in [the provision dealing with unpaid alimony.] As used herein, the term "net estate" shall mean [Robert's] gross estate passing under his Will (or otherwise, upon the occasion of his death), less funeral and burial expenses, administration fees and expenses, debts and claims against the estate, and Federal and State taxes.

the parties' arguments concerning these two claims are interchangeable. Therefore, we do not separately address the civil conspiracy claim in this opinion.

[4] For ease of reference, Robert and Ruth's children will be referred to as the Tensfeldt children throughout this opinion.

[5] The divorce judgment provided in part:

That the Stipulation heretofore entered into by and between the parties is fair and reasonable and the Court herewith approves the same and the same is incorporated as part of the Judgment in this action.

¶ 9. Robert married his second wife, Constance, in 1975. They remained married until Robert's death in 2000. Robert and Constance had no children together, although Constance had three children from a previous marriage. In 1978, Robert executed a will that was compliant with the stipulation and order—one-third of the net estate went to Constance, and two-thirds of the net estate went to his children or their issue.

¶ 10. In 1980, Robert retained Attorney LaBudde (LaBudde) of Michael Best & Friedrich, LLP to provide estate planning services. It is undisputed that Robert made LaBudde aware of his obligation to his children from the outset. When Robert initially met with La-Budde, he gave the attorney a copy of the divorce judgment and stipulation. LaBudde told Robert that he had three choices: comply with the stipulation; negotiate with the children to alter his obligation; or ignore the stipulation, knowing that the children might contest Robert's will upon his death. Robert chose the third option, and in 1981, LaBudde drafted an estate plan that did not leave two-thirds of the net estate outright to the Tensfeldt children.

¶ 11. After Robert executed the non-compliant estate plan, LaBudde received a letter from Robert's divorce attorney, J.M. Slechta. Attorney Slechta wrote:

> Since you have drafted a will for Mr. Robert Tensfeldt of Oconomowoc, I recalled that in his divorce in 1974 in which proceedings I represented him, it was agreed in the Stipulation made part of the judgment, some restrictions on the disposition of his estate . . . . Realizing this might have some effect upon the disposition which you have proposed I am enclosing a copy of such stipulation for your examination. There does not seem to be any sanction against disposition of assets during his lifetime.

LaBudde wrote back:

> Your letter . . . asks whether Mr. Tensfeldt's most re-
> cent Will . . . violates his obligations under that de-
> cree . . . .
>
> In my opinion, Mr. Tensfeldt's present Will needs some
> revision in light of the obligations under the divorce
> decree, of which I was unaware until receipt of your
> letter. On the other hand, the so-called "Economic
> Recovery Tax Act of 1981" does, as you know, offer
> significant new estate and gift tax advantages which
> may be available to Mr. Tensfeldt to some extent
> despite the decree.

¶ 12. Robert and LaBudde never changed the estate plan to bring it into compliance with the divorce stipulation and judgment. Even though Robert and Constance moved to Florida in 1985, they continued to retain the attorneys at Michael Best & Friedrich to handle their estate planning. Over the course of 12 years, LaBudde drafted and executed a series of revisions to the plan for Robert,[6] including the 1992 plan that was in effect when Robert died. None of the revised plans left at least two-thirds of his net estate outright to the three adult children of his first marriage.

¶ 13. Attorney LaBudde later scaled back his practice, and Robert first consulted with Attorney Haberman (Haberman) in 1994. In 1999, Robert met with Haberman to discuss his estate plan in depth. According to a memo from his file, Haberman "carefully outlined the assets passing to his children and his wifes children, and [Robert] decided to leave things as they are and make no changes" to the 1992 estate plan.

---

[6] New plans with minor revisions were executed in 1982, 1986, 1989, and 1992.

339

¶ 14. According to the 1992 plan, after Robert's death the Tensfeldt children would receive some money and property up front. However, the majority of Robert's estate would pour into an inter vivos trust. Constance would receive an income from the trust during her life, and after Constance's death her children would receive a cash payment from the trust. The Tensfeldt children would receive the remainder of the balance.

¶ 15. When he met with Robert in 1999, Haberman was unaware of a recent Florida case that would have a substantial impact on the distribution of Robert's assets. This decision, *Bravo v. Sauter,* 727 So. 2d 1103 (Fla. Ct. App. 1999), allowed a surviving spouse to elect against the will (thereby taking 30 percent of the estate off the top) and continue to receive income from the revocable trust for the remainder of her life.[7] Because he was unaware of *Bravo,* Haberman did not inform Robert of the likely impact of this decision—that Constance could elect to receive a larger share of the estate than Robert contemplated and to defer the bulk of the Tensfeldt children's inheritance until after her death. It is undisputed that Haberman was negligent in failing to properly advise his client.

¶ 16. Robert died in 2000. Robert's son and Constance were appointed personal representatives of the estate, and Haberman was retained as counsel. At that point, Haberman learned about the divorce stipulation, and he told Constance and the Tensfeldt children about its existence.

---

[7] Most states permit a surviving spouse to take an elective share of the deceased spouse's estate. However, the surviving spouse's decision to elect against the will generally extinguishes the spouse's other rights under the will.

¶ 17. The estate was probated in Florida, with Haberman as the attorney representing the estate. *See Estate of Robert C. Tensfeldt, Deceased,* Case No. 00–809–CP–02–HDH. This probate action turned into a lengthy dispute, encompassing two independent actions in the Florida circuit court.[8] Initially, the Tensfeldt children sued to enforce the stipulation and order promising them two-thirds of Robert's net estate outright. *See Tensfeldt v. Tensfeldt,* Case No. 01–26–CA–HDH. Constance objected to the claim, elected against the will, and expressed her intention to continue to receive income under the inter vivos trust. The children objected to Constance's election and argued that it was untimely. Haberman, representing the estate, also objected to Constance's election and argued that *Bravo* was wrongly decided.

¶ 18. The court determined that Constance's election was timely, that she was entitled to partial distribution of her elective share, and that under *Bravo* she was also entitled to receive income from the trust. Further, the court held that the children's claim for two-thirds of the estate was barred by the 20–year statute of limitations for judgments.

¶ 19. The children appealed both determinations. The Florida court of appeals concluded that Constance's election was timely and that she could both receive an elective share of the estate and continue to receive income under the trust. *Tensfeldt v. Tensfeldt,* 839 So. 2d 720, 727 (Fla. Ct. App. 2003). However, applying Florida law, the court concluded that the children's claim for two-thirds of the estate was not barred by the statute of limitations for judgments because it was

---

[8] There were two separate actions in the Florida trial courts. They were consolidated into one appeal.

enforceable as a contract.[9] *Id.* at 724–25. The court held that Constance's elective share (30 percent) would be calculated before the children's claim for two-thirds of Robert's net estate. *Id.* at 727.

¶ 20. On remand, the circuit court awarded Constance statutory attorney fees of $444,000 for the entire action under Florida Statutes §§ 733.106(3) and 733.6171(4)(a). The court determined that the elective share issue was intertwined with the children's claim on the estate, and that it was not possible to isolate fees for the elective share litigation. The fees were to be paid out of the estate and subtracted from the Tensfeldt children's portion of the estate. Ultimately, the parties settled the dispute.

¶ 21. After settling, the children filed suit in Wisconsin against Attorneys LaBudde and Haberman. They alleged various intentional torts, including aiding and abetting and civil conspiracy, as well as negligence against LaBudde for helping Robert violate the divorce judgment.[10] Further, they alleged negligence against Haberman, arguing that they have been injured because of his failure to advise Robert of the impact of *Bravo*. In addition, they asserted that LaBudde and Haberman's law firm, Michael Best & Friedrich LLP,

---

[9] In making this determination, the court said that while the statute of limitations for enforcing a judgment had passed, the stipulation was a contract and was therefore enforceable. *Tensfeldt v. Tensfeldt,* 839 So. 2d 720, 725 (Fla. Ct. App. 2003).

[10] The children alleged tortious aiding and abetting, civil conspiracy, negligent will drafting, intentional interference with inheritance, and intentional interference with a contract to make a will. The circuit court dismissed the intentional interference with inheritance claim and the intentional interference with contract claim at summary judgment.

was liable for claims against the two attorneys. Following discovery, all parties moved for summary judgment.

¶ 22.　The circuit court determined that as a matter of law LaBudde aided and abetted Robert's violation of the divorce judgment and set trial for the issues of causation and damages. Further, the court determined that the civil conspiracy and negligence claims against LaBudde presented questions of fact for the jury to decide. However, the court dismissed all claims against Haberman, concluding that he was negligent as a matter of law but that the evidence that his negligence had actually caused harm to the children was speculative. Specifically, the court stated that the children presented no evidence that Robert would have changed his estate plan had he known that Constance could simultaneously elect against the will and receive income from the trust.

¶ 23.　The children appealed and LaBudde cross-appealed. The court of appeals certified the cross-appeal to this court, noting that the claims against Haberman could be resolved based on existing law. However, the court said that the claims against LaBudde presented unanswered questions of law.[11] We accepted jurisdiction

---

[11] The court of appeals certified the following questions to this court:

> First, does a trial court have authority to incorporate into a divorce judgment a stipulation requiring a party to maintain a will in favor of an adult child? Assuming so, is such a stipulation thereafter enforceable only as a judgment or as [a] contract to make a will, or both? In either case, should an attorney who drafts a will at his client's direction, which he knows violates the terms of such an incorporated stipulation, but who also advises the client that the will could potentially be challenged as a breach of contract, be excused from any third party liability under either a qualified immunity theory or some other good faith advice defense?

Certification memorandum, ¶ 2.

343

of the entire case pursuant to Wis. Stat. § 809.61 and address the questions as argued and briefed by the parties. *State v. Mitchell,* 167 Wis. 2d 672, 677, 482 N.W.2d 364 (1992).

II

¶ 24. The circuit court ruled on cross motions for summary judgment. We review a grant or denial of summary judgment using the same methodology as employed by the circuit court. *Novell v. Migliaccio,* 2008 WI 44, ¶ 23, 309 Wis. 2d 132, 749 N.W.2d 544. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id. (citing* Wis. Stat. § 802.08(2)).

¶ 25. This case addresses issues of the liability of an attorney for aiding and abetting a client's alleged violation of a divorce judgment, the enforceability of the judgment, qualified immunity, and the good faith advice privilege. As discussed here, the issues present questions of law which we decide independently of the determinations rendered by the circuit court. *See State v. Ford,* 2007 WI 138, ¶ 29, 306 Wis. 2d 1, 742 N.W.2d 61. The case also raises a question of whether there was sufficient evidence of harm to raise a genuine issue of material fact. This also presents a question of law, which we review independently of the circuit court's determination, but applying the same methodology and benefitting from its analysis. *AccuWeb, Inc. v. Foley & Lardner,* 2008 WI 24, ¶ 16, 308 Wis. 2d 258, 746 N.W.2d 447.

### III. Intentional Tort Claims Against
### Attorney LaBudde

¶ 26. The Tensfeldt children allege that between 1980 and 1992, Attorney LaBudde assisted Robert in unlawfully violating a court order mandating that Robert make and maintain a specific will. During that time, LaBudde drafted five wills for Robert, each of them noncompliant with a divorce judgment. The circuit court determined that these actions constituted aiding and abetting as a matter of law:[12]

> The parties stipulate that Robert desired to violate the judgment requiring him to leave two-thirds of his net estate to the Children, an indisputably unlawful act. See Wis. Stat. § 785.01(1)(b). However, to do so, he needed help in drafting his will, and LaBudde provided this assistance. There is also no question that LaBudde intended that the will would violate the judgment. He was aware of the court's judgment and knew that the will he drafted violated it. Since there are no disputed material facts and the only inferences that can be drawn from them lead to the conclusion that LaBudde aided and abetted Robert in his violation of a court judgment and consciously intended to do so, summary judgment is appropriate.

The court then scheduled trial on the issue of damages.

¶ 27. LaBudde disagrees with the court's determination. He asserts that the court order to make and maintain a will was not enforceable because the court lacked authority to impose it, and thus it was not an unlawful act for Robert to violate it. Alternatively, he

---

[12] A person is liable in tort for aiding and abetting if the person (1) undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his conduct will yield such assistance. *Winslow v. Brown,* 125 Wis. 2d 327, 336, 371 N.W.2d 417 (Ct. App. 1985).

345

argues that the judgment was no longer enforceable after 20 years had passed. Finally, LaBudde contends that he cannot be sued by a third party for actions taken to fulfill his professional obligations, absent fraud or malice. He argues that either qualified immunity or the good faith advice privilege bars the claim of aiding and abetting. We address each argument in turn.

## A. Can the Judgment Be Enforced?

¶ 28. LaBudde argues first that the judgment requiring Robert to create a will in favor of his children was unenforceable at its inception because the court had no authority to incorporate a stipulation for property distribution to children into a divorce judgment. Citing *Vaccaro v. Vaccaro*[13] and *Estate of Barnes v. Hall*,[14] LaBudde asserts that the statutes in effect in 1974 did not allow a court to order property division for the benefit of children of the marriage, rendering the judgment unenforceable. He further asserts that even if this court eventually concludes that it was unlawful for Robert to violate the judgment, the question of whether it was unlawful was fairly debatable.[15]

¶ 29. In both *Barnes* and *Vaccaro,* the judgment of divorce incorporated a stipulation which provided that the former husband would maintain a life insurance policy for the benefit of the minor children. In both

---

[13] 67 Wis. 2d 477, 227 N.W.2d 62 (1975).

[14] 170 Wis. 2d 1, 486 N.W.2d 575 (Ct. App. 1992).

[15] An attorney is generally immune from liability for advice and assistance given in good faith when pursuing a client's interest on a matter fairly debatable in the law. *Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d 220, 242, 517 N.W.2d 658 (1994). Immunity and the good faith advice privilege are addressed below, in Part III.C.

cases, the children attempted to enforce the stipulation as a property right after they had become adults. Both this court and the court of appeals concluded that under such circumstances, the provisions were for child support rather than property division for the benefit of adult children.[16]

¶ 30. In *Vaccaro,* a divorce judgment obligated Mr. Vaccaro to maintain a substantial life insurance policy naming his three minor sons as beneficiaries. *Vaccaro,* 67 Wis. 2d at 478–79. Sixteen years after the judgment was entered, Mrs. Vaccaro sought a court order requiring her former husband to withdraw money from the life insurance policies in order to pay for the sons' college tuition. In making its determination that the children did not have a property right to the funds, this court concluded that the provision was child support, rather than property division. *Id.* at 482. We noted that under Wis. Stat. § 247.26, "[a] final property division can be made only between husband and wife." *Id.* at 483.

¶ 31. The analysis of *Estate of Barnes* relies heavily on the above quoted sentence from *Vaccaro.* In *Barnes,* the divorce judgment obligated the husband to maintain an insurance policy for the benefit of the two youngest children of the marriage. *Barnes,* 170 Wis. 2d at 5. The court of appeals concluded that the language was ambiguous as to whether the provision was intended as child support or property division. Ultimately, the court interpreted it as one for child support: "[B]ecause the law does not allow estate planning in a

---

[16] The concurrence/dissent relies heavily on *Barnes* and *Vaccaro.* Its reliance is misplaced. Neither of these cases concluded that the court lacked jurisdiction to incorporate the parties' stipulation into a divorce judgment. Indeed, the word "jurisdiction" does not appear in either case.

347

divorce for purposes of creating a property benefit for adult children, the clause at issue, as a matter of law, must be treated as one relating to child support." *Id.* at 13.

¶ 32. Both *Vaccaro* and *Barnes* conclude that because divorce is created by statute, divorce courts had the authority to order only what was allowed for under § 247.26 at that time—division of the estate between the spouses, alimony, and child support.[17] In both cases, the provisions could reasonably have been interpreted as either property division for the benefit of the children of the marriage or child support intended to expire when the children reached the age of majority. In both cases, the courts chose the interpretation that was expressly provided for in § 247.26—child support for the minor children.

¶ 33. Here, however, we do not face the same dilemma. Given that there were no minor children to support at the time of the divorce, the divorce stipulation could not have been intended as child support. Instead, this stipulation and judgment must have been an attempt to divide the estate for the benefit of the adult children.

¶ 34. To the extent that *Barnes* can be read to imply that a property benefit for adult children cannot be incorporated into a court order, we reject the premise. It is not a complete statement of the law. The 1973–74 statutes explicitly provided for the parties to stipulate to a division of the estate, and for the court to

---

[17] Wis. Stat. § 247.26 (1973–74) provided, in part:

The court may also finally divide and distribute the estate, both real and personal, of either party between the parties . . . .

accept the parties' stipulation and incorporate it into the divorce judgment:

> ... the parties may, subject to the approval of the court, stipulate for *a division of estate,* for alimony, or for the support of children, in case a divorce or legal separation is granted . . . .

Wis. Stat. § 247.10 (1973–74) (emphasis added). Unlike § 247.26, which permitted the court to "finally divide and distribute the estate . . . *between the parties,*" there is no restriction on who can be the beneficiary of the parties' voluntary stipulation for a division of the estate under § 247.10. (Emphasis added.)

■■

¶ 35. Although the court on its own initiative does not have the authority to impose an order for property division to adult children, the parties may voluntarily stipulate to do so. The parties may freely and knowingly stipulate to an overall settlement that is fair and equitable and not against public policy, and the court can incorporate their voluntary stipulation into its judgment. *See Bliwas v. Bliwas,* 47 Wis. 2d 635, 637–38, 178 N.W.2d 35 (1970); *Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984); *Ross v. Ross,* 149 Wis. 2d 713, 439 N.W.2d 639 (Ct. App. 1989).[18] In such a case, violation of the judgment is unlawful and can subject the violator to sanctions for contempt of court. *Bliwas,* 47 Wis. 2d at 641.

---

[18] In *Bliwas,* we enforced a divorce judgment which incorporated the parties' stipulation that the father would contribute to the education of his adult son. *Bliwas v. Bliwas,* 47 Wis. 2d 635, 637–38, 178 N.W.2d 35 (1970). In *Rintelman,* we enforced a divorce judgment which incorporated the parties' stipulation that alimony would continue even if the former wife remarried. *Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984).

¶ 36. Even if the interpretation of *Vaccaro* and *Barnes* was fairly debatable, as LaBudde asserts, it was not fairly debatable that a client must follow a court judgment. By asserting that the judgment was unenforceable, LaBudde misses the mark.

¶ 37. Robert was obligated to follow the court's judgment unless it was modified in a proceeding in the circuit court or on appeal. *See State v. Ramsay,* 16 Wis. 2d 154, 165, 114 N.W.2d 118 (1962); *Cline v. Whitaker,* 144 Wis. 439, 439, 129 N.W. 400 (1911). A judgment imposes a legal obligation and violating it can subject an individual to contempt proceedings. This is true even if the judgment was entered in error, unless the court lacked jurisdiction to impose the judgment. The exceptions to this proposition prove the rule.

¶ 38. In *State v. Ramsay,* the dispute surrounded a court order issued in a divorce proceeding between two spouses, Mr. and Mrs. Bowser. Ramsay, the superintendent of the Milwaukee County Children's Home, was not a party in the divorce action. The court gave custody of the Bowsers' sons to the Milwaukee department of public welfare and ordered the Milwaukee County Children's Home to accept the boys. When Ramsay refused to do so, the circuit court determined that Ramsay was in contempt.

¶ 39. This court reversed, concluding that the circuit court did not have jurisdiction to impose an order on Ramsay, who was not a party in the divorce action. We stated:

> The universal rule is that the failure of a person to obey an order that is void for want of jurisdiction in the issuing court is not punishable as contempt. . . .
>
> . . . .

> On the other hand, disobedience of an order made by a court within its jurisdiction and power is a contempt, although the order may be clearly erroneous.

*Ramsay,* 16 Wis. 2d at 165.

¶ 40. As explained above, a court order or judgment must be complied with even if the party—or his attorney—disagrees with the order. LaBudde cites a United States Supreme Court case, *Maness v. Meyers,* 419 U.S. 449 (1975), but that case lends further support to the proposition that under these circumstances, it was unlawful for Robert to violate the divorce judgment.

¶ 41. In *Maness,* the attorney advised his client on Fifth Amendment grounds to violate a court order to produce documents. The court imposed contempt sanctions against the attorney. Ultimately, the *Maness* court concluded under the circumstances of that case that "[c]ompliance could cause irreparable injury because appellate courts cannot always 'unring the bell' once the information has been released." *Id.* at 460. In reversing, the Supreme Court emphasized the rule that court orders and judgments are to be obeyed unless subsequently modified in court proceedings:

> We begin with the basic proposition that all orders and judgments must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. . . . [A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.

*Id.* at 458–59 (citations and quotations omitted).

351

¶ 42. Here, there is no claim that the divorce court lacked jurisdiction[19] or that obeying the judgment would irrevocably release information that could be used against Robert. Even if LaBudde believed that the judgment exceeded the divorce court's authority under the 1974 statutes, the only lawful courses of action were to follow the judgment, to ask the court to modify it, or to appeal the judgment.

¶ 43. Although LaBudde has not advanced an issue about jurisdiction in this court or any other, we digress to address it here because the concurrence/dissent has raised the issue on its own and assembled an argument on LaBudde's behalf. Likely this jurisdictional issue was not raised here or below because it overlooks Wis. Stat. § 247.10 (1973–74), which was in effect at the time of the judgment, and because it is inconsistent with our case law. Without the benefit of any briefs or arguments by the parties on a jurisdictional issue, the concurrence/dissent incorrectly asserts that the divorce judgment was void from its inception because the court lacked subject matter jurisdiction to incorporate into the judgment a stipulation for the benefit of adult children. *See* concurrence/dissent, ¶ 112.

¶ 44. As the concurrence/dissent states, the subject matter jurisdiction of a court must be construed at

---

[19] The concurrence/dissent takes issue with our statement that there is no claim that the divorce court lacked jurisdiction here. *See* concurrence/dissent, ¶ 130, n.31. The concurrence/dissent simply misstates LaBudde's claims.

In his brief, LaBudde argued that the stipulation was enforceable as a contract but not as a judgment. However, he never argued that the divorce judgment was void for lack of subject matter jurisdiction. The words "void" and "jurisdiction" do not appear in his argument that the judgment is unenforceable.

the time of the entry of a judgment. See concurrence/ dissent, ¶ 108. The statutes in force at the time of the Tensfeldts' divorce provided that "the court may finally divide and distribute the estate . . . between the parties." Wis. Stat. § 247.26 (1973–74). However, they also provided that a court could accept the parties' stipulation "for a division of estate." Wis. Stat. § 247.10 (1973–74).

¶ 45. Section 247.10 did not restrict stipulations for division of the estate to a division between the parties to the divorce. It permitted the court to incorporate into the judgment any stipulation for division of the estate, provided the court determined that it was fair and reasonable. *Id.*; *see also Bliwas,* 47 Wis. 2d at 637–38. Under the relevant case law at the time, it was apparent that the court had subject matter jurisdiction to incorporate the Tensfeldts' stipulation into its judgment. *See Bliwas,* 47 Wis. 2d at 637–38.[20]

¶ 46. In addition to the clear statutory authority which undermines the argument advanced by the concurrence/dissent, our case law also thwarts the argument. In *Bliwas,* the parties stipulated that Mr. Bliwas would contribute to the education of his son beyond his twenty-first birthday. *Id.* This stipulation was entered into the divorce judgment, even though the statutes in force permitted the court to order support of minor children only. *Id.* at 638. When Mr. Bliwas failed to comply with this stipulation, Mrs. Bliwas sought contempt sanctions. *Id.* at 637.

---

[20] The concurrence/dissent misconstrues the breadth of our holding. It states that our holding permits a divorce court to enter any type of stipulation into a divorce judgment, thereby expanding the subject matter jurisdiction of the court. *See* concurrence/dissent, ¶¶ 115, 117, 118. The concurrence/dissent's concern is unwarranted. It is clear that the court had subject matter jurisdiction over division of the estate, and the stipulation at issue here was for a division of the estate.

353

¶ 47. Mr. Bliwas protested that contempt sanctions could not be imposed because the divorce court lacked jurisdiction to enter the stipulation into the divorce judgment. *Id.* The parties agreed that "if there had been no stipulation or agreement of the parties involved, the family court would have been without jurisdiction to enter an order requiring the father to contribute to the education of his son beyond the son's twenty-first birthday." *Id.* at 637–38.

¶ 48. In concluding that the judgment was enforceable, the *Bliwas* court repudiated the same lack of jurisdiction argument advanced by the concurrence/dissent today. We stated, "A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment, and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction." *Id.* at 641. Because the parties had agreed to the stipulation and the divorce court accepted it and incorporated it into the judgment, we concluded that the judgment was enforceable.[21] *Id.* at 638–39.

---

[21] The concurrence/dissent argues that *Bliwas* is not applicable because it relies on a theory of estoppel. It asserts that because LaBudde was not a party to the divorce, he cannot be estopped.

This argument misses the mark for two reasons. First, our case law has explained that "the 'estoppel' rule of *Rintelman* and *Bliwas* is not one based on the historic elements of the equitable doctrine. It is simply a rule of law which holds the parties to the terms of a stipulated divorce judgment in cases where the stipulation is fair and not violative of public policy, and where, but for the parties' agreement, the court could not have entered the judgment it did." *Ross v. Ross,* 149 Wis. 2d 713, 718–19, 439 N.W.2d 639 (Ct. App. 1989). Second, whether LaBudde could be

354

¶ 49. Further, in *Ross,* the court incorporated into the judgment the provisions of a lengthy marital settlement agreement negotiated by the parties and their attorneys. 149 Wis. 2d at 714. In part, it provided that Mr. Ross would make periodic payments to Mrs. Ross, and that "neither the term nor the amount of the . . . payments shall be subject to change by further agreement or Court order." *Id.* Several years after the divorce judgment was entered, Mr. Ross filed a motion in court to modify the provision.

¶ 50. We rejected Mr. Ross's contention that the provision was unenforceable because the court's authority to order such a provision was not expressly conferred by statute:

> We agree with [Mr. Ross] that divorce is a statutory procedure and that the divorce court's authority is limited to "those express and incidental powers that are conferred by statute." We also agree that no statute expressly provides for the type of "unamendable" spousal support ordered in this case and, further, that the court could not order such payments absent the parties' agreement. *But the court's authority to impose an obligation on one or both of the parties without their consent is one thing, and the authority to do so upon their agreement and at their request is quite another.* In the latter situation, *the supreme court has had little trouble approving and enforcing divorcing parties' agreements even when those agreements transcend the provisions of the applicable statutes.*

*Id.* at 716 (emphasis added).

¶ 51. In support of its argument to the contrary, the concurrence/dissent cites just one case for the

---

estopped is irrelevant. The relevant questions are whether Robert committed an unlawful act and LaBudde aided and abetted his client's act.

proposition that the court lacked subject matter juris-
diction to incorporate the parties' stipulation into the
divorce judgment. *See Stasey v. Miller,* 168 Wis. 2d 37,
483 N.W.2d 221 (1992). That case is readily distinguish-
able. First, it involved an "extraneous issue"—a dispute
between an attorney and a client for fees owed rather
than a dispute between the divorcing parties. *See id.* at
59–60. Second, it did not involve a voluntary stipulation
between the parties that was deemed fair and reason-
able and not against public policy.

¶ 52. Here, by contrast, the legislature expressly
permitted a divorce court to incorporate the parties'
stipulation for division of the estate into a divorce
judgment, and this court has concluded that such a
judgment is enforceable by contempt sanctions. *See*
Wis. Stat. § 247.10 (1973–74); *Bliwas,* 47 Wis. 2d at 638.

¶ 53. The law in 1974 was clear that when a party
agreed to a stipulation for division of the estate that
was incorporated into a divorce judgment, the judgment
was enforceable. The concurrence/dissent's assertion to
the contrary is simply erroneous.[22]

---

[22] *Schmitz v. Schmitz,* 70 Wis. 2d 882, 236 N.W.2d 657 (1975)
does not support the concurrence/dissent's argument. See
concurrence/dissent, ¶ 118, n.19. In that case, there was a
dispute as to the intent of the parties in entering the stipulation.

The parties had stipulated that Mr. Schmitz would make
child support payments "for the minor children . . . until each of
said children attains the age of 21 years[.]" *Id.* at 884. When the
legislature changed the age of majority from 21 to 18, Mr.
Schmitz asked the court to modify the judgment. *Id.* The court
interpreted the language of the stipulation, determining that
the intention was to provide for the children until they reached
the age of majority. *Id.* at 889.

Here, there is no dispute that the parties intended to
incorporate into the judgment a provision for estate division to

¶ 54. Thus, we conclude that the court judgment requiring Robert to maintain a will giving two-thirds of his net estate outright to his children was enforceable. We further determine that it was unlawful for Robert to violate the judgment and that his obligation to abide by the judgment was not fairly debatable.

### B. Does a Statute of Limitations or Repose Bar this Claim?

¶ 55. LaBudde also asserts that, even if the judgment was enforceable at the time it was entered, it was subject to the 20–year statute of repose for actions to enforce a judgment.[23] As such, he claims that after December 5, 1994, the divorce judgment no longer had any force or effect and Robert had broad authority to revise or replace his will at any time prior to his death. He concludes that there is no basis for the Tensfeldt children to argue that Robert's estate plan was unlawful in 2000, at the time of his death.

¶ 56. Again, LaBudde's argument misses the mark. The issue is not whether the judgment survives an asserted statute of repose for enforcement of judgments. Rather, the focus is on when the tortious conduct occurred.

¶ 57. Because the alleged tortious conduct at issue in this case—the drafting of the noncompliant

---

benefit the adult children. Unlike Mr. Schmitz, Robert did not ask the court to modify the judgment in light of changing law. He simply ignored it.

[23] *See* Wis. Stat. § 893.40:

Except as provided in ss. 846.04(2) and (3) and 893.415, action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred.

estate plans—occurred between 1980 and 1992, we find no occasion to determine whether the court order to make a will continued to be enforceable in 2000, when Robert died. To resolve this dispute, it is sufficient to conclude that it was unlawful for Robert to violate the court order between 1980 and 1992.[24]

¶ 58. The parties acknowledge that the discovery rule, Wis. Stat. § 893.04, applies to this action. *See*

---

[24] The concurrence/dissent asserts that "because Wis. Stat. § 893.40 bars enforcement of the judgment against Robert subsequent to December 5, 1994, the claim for aiding and abetting is necessarily barred as well." See concurrence/dissent, ¶ 136. The assertion that after 20 years a divorce judgment is no longer enforceable could have disastrous results for some litigants. For example, a 70–year-old divorcee who relied on long-term court-ordered maintenance could find that her only source of income was unexpectedly extinguished after 20 years.

Moreover, the concurrence/dissent purports to cite two cases in support of this proposition that "there can be no recovery for aiding and abetting if there can be no recovery for violation of the divorce judgment." *See* concurrence/dissent, ¶ 136. Neither of these cases is on point.

*Abramian v. President & Fellows of Harvard College,* 731 N.E.2d 1075 (Mass. 2000) and *Tate v. Dep't of Mental Health,* 645 N.E.2d 1159 (Mass. 1995) are both employment discrimination cases. Both mention in passing that if there is no unlawful employment discrimination, there is necessarily no aiding and abetting of unlawful discrimination. This proposition is unremarkable and has no application to the facts of this case.

Here, we have concluded that it was unlawful for Robert to violate the divorce judgment by executing noncompliant wills between 1980 and 1992. We have further determined that LaBudde's conduct satisfied the elements of aiding and abetting. The Tensfeldt children do not bring an action to enforce a judgment, and therefore the statute of repose for enforcing a judgment is simply not relevant in our analysis.

*Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983). However, we do not decide here whether any other statute of limitations bars this tort claim or when the causes of action accrued. Those issues were not briefed to this court and it is properly within the province of the circuit court upon remand to address such issues if argued by the parties.

### C. Is LaBudde Protected by Either Immunity or Privilege?

¶ 59. Finally, LaBudde raises the defenses of qualified immunity and good faith advice. He argues that an attorney is not liable to third parties for acts committed on behalf of his client in the exercise of his professional responsibilities as an attorney. He cites *Yorgan v. Durkin* for the proposition that "[t]he well established rule of law in Wisconsin is that absent fraud or certain public policy considerations, an attorney is not liable to third parties for acts committed in the exercise of his duties as an attorney." 2006 WI 60, ¶ 27, 290 Wis. 2d 671, 715 N.W.2d 160.

¶ 60. We agree that in most cases, an attorney is immune from liability to third parties based on the attorney's failure to perform a duty owed to a client. However, failure to perform an obligation to a client is entirely distinct from conduct that assists the client committing an unlawful act to the detriment of a third party.

¶ 61. In *Yorgan v. Durkin,* we refused to hold an attorney personally liable for the fees his client owed to a chiropractor. The client had directed Attorney Durkin to pay the chiropractor's fees out of the proceeds she received from a personal injury lawsuit, but Durkin failed to follow his client's instructions. The chiroprac-

359

tor brought suit against Durkin, alleging that Durkin was liable to third party creditors for failing to properly settle his client's obligations. *Id.*, ¶ 23. We concluded that the public policy factors "implicated by the nature of the situation at hand" did not weigh in favor of imposing liability to third party creditors. *Id.*, ¶¶ 29, 35.

¶ 62. The public policy implicated by the nature of this case weighs differently. Under these facts, the public policy balance favors liability. Unlike in *Yorgan v. Durkin,* the theory of liability advanced by the Tensfeldt children is not vicarious. It is not based on LaBudde's failure to fulfill a professional obligation to Robert to the detriment of the Tensfeldt children. Indeed, the parties agree that Robert asked LaBudde to draft the will in violation of the court judgment, and LaBudde was not negligent in performing this service. In contrast to *Yorgan v. Durkin,* the basis for liability here is that LaBudde knowingly assisted the commission of the unlawful act.[25]

---

[25] The Supreme Court Rules of professional conduct for attorneys provide guidance regarding the scope of representation. An attorney "shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent[.]" SCR 20:1.2(d) (2008). We have stated that "[t]here is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity." *Id.* cmt. 9. If a client insists upon pursuing an unlawful course of conduct, the attorney has one option—withdraw from the representation of the client. SCR 20:1.16(a)(1).

We are mindful that a violation of the rules does not impose civil liability on an attorney per se. *Yorgan v. Durkin,* 2006 WI 60, ¶ 25 n.8, 290 Wis. 2d 671, 715 N.W.2d 160.

¶ 63. A thorough discussion of an attorney's liability to third parties is found in *Strid v. Converse,* 111 Wis. 2d 418, 331 N.W.2d 350 (1983). In that case, we stated that immunity is not available when the attorney engages in fraudulent or unlawful acts:

> [An attorney] is duty bound . . . to exercise good faith. He must not be guilty of any fraudulent acts, and he must be free from any unlawful conspiracy with either his client, the judge, or any other person, which might have a tendency to either frustrate the administration of justice or to obtain for his client something to which he is not justly and fairly entitled.

*Id.* at 429 (quoting *Langen v. Borkowski,* 188 Wis. 277, 206 N.W. 181 (1925)). Further, the court concluded:

> [T]he immunity of an attorney who is acting in a professional capacity is qualified rather than absolute. The immunity from liability to third parties extends to an attorney who pursues in good faith his or her client's interest on a matter fairly debatable in the law. However, the immunity does not apply when the attorney acts in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled.

*Id.* at 429–30.

¶ 64. Here, LaBudde drafted documents that obtained for Robert something he was not legally entitled to—an estate plan that violated a court judgment requiring Robert to leave two-thirds of his net estate to his children outright. Under these circumstances, LaBudde is not entitled to qualified immunity.

361

¶ 65. LaBudde cites several cases from other jurisdictions for the proposition that an attorney is entitled to qualified immunity for aiding his client in committing an unlawful act. After reading these cases carefully, we determine that they do not support this proposition.[26] None of these cases involves the client's commission of an unlawful act. Instead, they involve the client's breach of a contract or fiduciary duty. We reject LaBudde's assertion that cases involving fiduciary duty are analogous to this case, which involves a client's court-imposed obligations.

---

[26] *See, e.g., Berg & Berg Enters., LLC v. Sherwood Partners, Inc.,* 32 Cal. Rptr. 3d 325 (Cal. App. 2005) (concluding that under a California statute, a creditor could not bring an action against the debtor company's attorney for conspiring to waste the company's assets through legal fees to resist involuntary bankruptcy because the attorney had no fiduciary duty to the creditor); *Reynolds v. Schrock,* 142 P.3d 1062 (Or. 2006) (concluding that a lawyer may not be liable to a third party for aiding and abetting his client's breach of fiduciary duty to that third party); *Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 407 (Tex. App. 2005) ("[W]e decline . . . to allow a non-client to bring a cause of action for 'aiding and abetting' a breach of fiduciary duty[.]"); *McDonald v. Stewart,* 182 N.W.2d 437 (Minn. 1970) (concluding that an attorney is not liable to third parties for counseling the client to commit a breach of contract, but noting that immunity may not be invoked by attorneys who participate in the perpetration of a fraudulent or unlawful act); *D&C Textile Corp. v. Rudin,* 246 N.Y.S.2d 813 (N.Y. Sup. Ct. 1964) (holding that an attorney is not liable to third parties for inducement to breach of contract, and noting that the dismissed complaint failed to state any facts to show any acts by the attorneys in furtherance of a tortious conspiracy); *Spinner v. Nutt,* 631 N.E.2d 542 (Mass. 1994) (determining that an attorney is not liable to a third party beneficiary for giving negligent advice, without more); *McKasson v. State,* 776 P.2d 971 (Wash. 1989) (holding that an attorney who gives advice which, taken by client, harms a third party is not liable to that third party).

¶ 66. LaBudde also argues that he is entitled to the good faith advice privilege. This privilege is based on the Restatement (Second) of Torts § 772 (1979), which this court has neither adopted nor rejected as applied to attorneys. Notably, this section of the Restatement focuses on advice leading to a breach of contract:

> One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person
>
> (a) truthful information, or
>
> (b) honest advice within the scope of a request for the advice.

*Id.* We acknowledge that in some circumstances, an attorney may in good faith advise a client to breach a contract. That is not the situation before us today.

¶ 67. The action here is not for breach of contract. Rather, it is an action in tort for assisting a client to unlawfully violate a court judgment. Further, LaBudde did not merely give advice. He drafted an estate plan that violated the judgment. We conclude that, under these facts, LaBudde is not entitled to this privilege.

¶ 68. In sum, we determine that the circuit court properly concluded that LaBudde is liable as a matter of law for aiding and abetting his client's unlawful act. The divorce judgment was enforceable at the time it was entered and at the time Robert asked LaBudde to draft an estate plan that violated the judgment. Under these facts, LaBudde is not entitled to either qualified immunity or the good faith advice privilege.

IV. Negligence Claim Against Attorney LaBudde

¶ 69. Having addressed the intentional tort claims, we turn next to the negligence claim against Attorney LaBudde. The circuit court denied LaBudde's motion to dismiss the Tensfeldt children's claim that LaBudde was negligent in the administration of Robert's estate. Because the Tensfeldt children were named in Robert's will, the court determined that they have standing to bring a negligence claim against LaBudde under the rule established in *Auric v. Continental Cas. Co.,* 111 Wis. 2d 507, 331 N.W.2d 325 (1983).

¶ 70. In *Auric,* this court established an exception to the general rule that an attorney is not liable in negligence to third parties for acts committed in the exercise of his professional obligations to his client. In that case, it was undisputed that the decedent intended to make Auric a beneficiary of his will. Auric's attorney drafted a will in accordance with the decedent's testamentary intent. However, the attorney negligently failed to collect the proper signatures, and as a result, the will was deemed invalid. Auric filed suit against the decedent's attorney, alleging negligence.

¶ 71. We concluded that the third party beneficiary of a will may maintain an action against an attorney who negligently drafted or supervised the execution of the will. *Id.* at 509. Our decision was based on the irreparable failure on the part of the attorney to carry out the decedent's intent:

> In this state, there is a constitutional right to make a will and to have it carried out according to the testator's intentions. This right reflects a strong concern that people should be as free as possible to dispose of their property upon their death. Allowing a will beneficiary to maintain a suit against an attorney who negligently

> drafts or supervises the execution of a will is one way to make an attorney accountable for his negligence.

*Id.* at 513 (citations omitted).

¶ 72. In such cases, the attorney's negligence frustrates the decedent's testamentary intent because it prevents the decedent's will from being enforceable. In cases falling under the *Auric* exception, there is no question that the decedent's intent was thwarted due to the attorney's negligence. In these cases, if the court did not allow the third party beneficiaries to bring suit, there would be no one to vindicate the client's expectation of competent representation because by definition, the client is deceased. Thus, *Auric* allows third party beneficiaries of a will to stand in for the deceased testator to ensure that his testamentary intent is fulfilled. This exception is a narrow one.

¶ 73. Here, the circuit court ruled that the Tensfeldt children were entitled to bring a claim of negligence against LaBudde because the children were named in the estate plan he drafted and executed. It is true that under Wisconsin law, a plaintiff must be named in a will in order to bring a negligence action against the attorney who negligently drafted or executed the will. *See Beauchamp v. Kemmeter,* 2001 WI App 5, ¶ 9, 240 Wis. 2d 733, 625 N.W.2d 297 (Ct. App. 2000). Being named in the instrument is a necessary but not a sufficient condition for overcoming the general rule that attorneys are immune from liability for negligence to third parties. The third party beneficiary must be able to establish that the attorney's failure thwarted the decedent's clear intent. *See Auric,* 111 Wis. 2d at 513.

■ 74. It is undisputed that LaBudde carried out Robert's explicit instructions when he crafted an estate plan that did not leave two-thirds of Robert's net estate outright to his children. To this end, we determine that the children's third party negligence claim cannot be maintained because they cannot establish that LaBudde's negligence thwarted Robert's clear intent. We conclude that the circuit court erred in denying LaBudde's motion for summary judgment on the negligence claim.

V. Negligence Claim Against Attorney Haberman

¶ 75. We turn now to the claim against Attorney Haberman. The circuit court dismissed the children's claim that Haberman was negligent for failing to advise Robert about the likely consequences of *Bravo v. Sauter,* 727 So. 2d 1103 (Fla. Ct. App. 1999). There is no dispute that Haberman's failure to inform Robert about *Bravo* was negligent. The dispute here is whether that negligence gives rise to liability and damages.

¶ 76. The children contend that they were damaged in two ways by Haberman's negligent advice to their father. They argue that they received a smaller share of the estate and had to await Constance's death to recover their inheritance. Additionally, they argue that they had to undertake expensive probate litigation in Florida, reducing the value of their inheritance still further. They assert that if Haberman had properly advised Robert, he would have made a definitive decision about whether to allow Constance to continue to receive income from the trust even if she elected against the estate. Therefore, they claim, the probate litigation would have been unnecessary.

¶ 77. As discussed above, an attorney generally is not liable to third parties for negligence in the performance of his duties to a client, even if the negligent advice causes the third party harm.[27] *See Yorgan,* 290 Wis. 2d 671, ¶ 27. Estate planning is one exception. Under *Auric,* 111 Wis. 2d at 509, the beneficiary of a will may maintain a lawsuit against "an attorney who negligently drafted or supervised the execution of the will even though the beneficiary is not in privity with that attorney." Here, Attorney Haberman neither drafted nor supervised the execution of Robert's estate plan. His only role was giving Robert admittedly negligent advice. Extending the *Auric* exception to attorneys who give negligent advice stretches the exception too far.

¶ 78. Additionally, we note that the circuit court determined that the children's claim that they had been harmed as a result of Haberman's negligence was speculative. The court's review of the evidence revealed no proof that Robert would have altered his estate plan had he realized the likely impact of *Bravo.*

¶ 79. The Tensfeldt children argue that they presented some evidence that Robert would have changed his mind had he known about the likely impact of *Bravo,* and that this evidence is sufficient to pass summary judgment. Specifically, they point to Robert's

---

[27] The circuit court, the court of appeals, and the parties refer to this issue as standing. Wisconsin liberally interprets the concept of standing, and parties who are aggrieved are generally thought to have standing to sue. *See In re Guardianship of Muriel K.,* 2002 WI 27, ¶ 16, 251 Wis. 2d 10, 640 N.W.2d 773. This issue is more properly understood as a question of whether an attorney is entitled to qualified immunity from lawsuits brought by third parties.

1999 approval of an estate plan that did not take into account Constances's right to elect against the estate. The children contend that this distribution scheme represents Robert's testamentary intent and is evidence that, had he understood that Constance could elect against the estate, he would have increased the distribution to his children. In addition, the children point to statements made by Haberman in Florida probate court when he argued on behalf of the estate against Constance's decision to elect against the will.

■

¶ 80. The circuit court correctly determined that the children's evidence of injury was speculative, and was therefore insufficient to raise a genuine issue of material fact. *See AccuWeb,* 308 Wis. 2d 258, ¶ 21. Robert's 1999 approval of the distribution scheme is evidence of what his desires would have been had *Bravo* not been a factor. Looking at this evidence, however, there is simply no way to make even an educated guess about what Robert would have done had he understood that this distribution plan would not be carried out due to *Bravo.* A reasonable jury, looking at this evidence, would have no basis to determine by a preponderance of the evidence that Robert would have altered his estate plan had he understood Constance's rights under Florida law.

¶ 81. Further, the circuit court correctly determined that Haberman's arguments in probate court are not evidence of what Robert would have done had he been advised about *Bravo.* Because Haberman did not inform Robert of *Bravo,* Haberman never learned whether and how Robert would have altered his estate plan. None of Haberman's statements to the court reflects any personal knowledge about what Robert would have done had he been properly advised.

¶ 82. Under these circumstances, we conclude that the circuit court did not err in granting summary judgment. Haberman is not liable to third parties for his negligent advice, and further, the children failed to present sufficient evidence that they were harmed by Haberman's negligent advice to create a genuine issue of material fact.

## VI

¶ 83. In sum, we determine that the circuit court properly concluded that Attorney LaBudde is liable as a matter of law for aiding and abetting his client's unlawful act. The divorce judgment was enforceable at the time it was entered and at the time Robert asked LaBudde to draft an estate plan that violated the judgment. Qualified immunity and the good faith advice privilege do not apply under these facts.

¶ 84. Additionally, we determine that the children's third party negligence claim against LaBudde cannot be maintained because they cannot establish that LaBudde's negligence thwarted Robert's clear intent. Thus, we conclude that the circuit court erred in denying LaBudde's motion for summary judgment on the negligence claim. Finally, we conclude that the circuit court did not err in granting summary judgment in favor of Attorney Haberman. Accordingly, we affirm in part and reverse in part the order of the circuit court, and we remand to the circuit court for further proceedings.

*By the Court.*—The order of the circuit court is affirmed in part and reversed in part, and the cause is remanded.

MICHAEL J. GABLEMAN, J. did not participate in this decision.

¶ 85. PATIENCE DRAKE ROGGENSACK, J. (*concurring in part, dissenting in part*). I agree with the majority opinion that the third-party claim for negligence against Attorney Roy C. LaBudde (LaBudde) should be dismissed and that the claims against Attorney F. William Haberman should be dismissed as well.[1] I write separately for three reasons: (1) I conclude that the plaintiffs' claim against LaBudde, based on aiding and abetting Robert Tensfeldt (Robert) in allegedly violating a provision of a 1974 divorce judgment that required him to will two-thirds of his net estate to his three adult children, fails to state a claim on which relief can be granted because the estate planning provision of the divorce judgment exceeded the circuit court's subject matter jurisdiction; (2) I conclude that LaBudde was immune from liability in drafting Robert's 1992 will because LaBudde proceeded in a good faith belief that the provision in the 1974 divorce judgment that required estate planning in favor of the adult children was void from its inception, as a judgment; and (3) I conclude that even if I were to assume, arguendo, that the directive to make a will in the 1974 divorce judgment were enforceable when made, Wis. Stat. § 893.40, a 20–year statute of repose, precluded actions on the divorce judgment after December 5, 1994. Therefore, the divorce judgment had no effect, as a judgment, in 1999 when Robert reaffirmed the will that he made in 1992, and it had no effect at his death in 2000. As a result, the aiding and abetting claim against LaBudde must be dismissed. Because the majority opinion concludes otherwise, I respectfully dissent from that portion of the majority opinion that addresses the aiding and abetting claim.

[1] Majority op., ¶ 84.

## I. BACKGROUND

¶ 86. Robert and Ruth Tensfeldt were divorced in 1974. At the time of the divorce, they had three adult children: Christine, Robert William and John (hereinafter referred to as the adult children). As part of the divorce judgment, Robert and Ruth entered into a very detailed stipulation that required many financial accommodations by Robert. One of those financial obligations involved estate planning, in that Robert agreed to make a will that would provide two-thirds "of his net estate outright to the three adult children."[2]

¶ 87. Robert married Constance in 1975. In 1985, Robert and Constance changed their domicile to Florida. In 1992, LaBudde assisted Robert in drafting a will that did not comply with the requirement to leave two-thirds of his net estate to the adult children. Robert made the estate plan after LaBudde advised Robert that this estate plan did not comply with his 1974 agreement to leave two-thirds of his net estate to the adult children.

¶ 88. In 1999, Robert's estate plan was reviewed again with him, this time by Haberman. Robert decided to make no changes. Robert died on April 22, 2000, survived by his second wife, Constance. In June of 2000, Robert's 1992 will, which he affirmed in 1999, was entered into probate in Florida as *Estate of Robert C. Tensfeldt, Deceased,* No. 00–809–CP–02.

¶ 89. The adult children did not know of the 1974 divorce stipulation until Robert's 1992 will was entered into probate court in 2000 and Haberman told them of the 1974 stipulation. In November of 2000, the

---

[2] The stipulation that was incorporated into the 1974 divorce judgment is attached to the complaint.

Tensfeldt children filed claims in probate court seeking two-thirds of Robert's net estate in accord with the 1974 stipulation. Constance filed a claim for a spousal elective share of the estate, pursuant to Fla. Stat. § 732.212 (1997).

¶ 90. The adult children also filed a separate action against Constance, individually, and as personal representative of Robert's estate. In the separate action, the adult children claimed that: (1) they were enforcing the 1974 Wisconsin divorce judgment; (2) if the divorce stipulation were held to be a contract to make a will, they were third-party beneficiaries of the contract, which had been breached; and (3) Constance's election against the will should be disallowed as untimely made. Constance moved for summary judgment dismissing their claims, which the probate court granted.

¶ 91. The adult children appealed to the Florida Court of Appeals, which affirmed in part and reversed in part. *Tensfeldt v. Tensfeldt,* 839 So. 2d 720 (Fla. Dist. Ct. App. 2003). The court of appeals held that the divorce judgment could not be enforced because it had never been "domesticated" in Florida, and the statute of limitations to enforce the decree in Florida barred enforcement. *Id.* at 725.

¶ 92. However, the court of appeals also concluded that the divorce stipulation could be enforced as a contract to make a will and that the children were third-party beneficiaries of that contract. *Id.* at 721–22. Constance had argued that if the adult children had a breach of contract claim, it accrued on the date of the 1992 will. Therefore, it was barred by Florida's five-year statute of limitations for breach of contract claims. *Id.* at 724. The court of appeals rejected that argument, concluding that "a cause of action for breach of a contract requiring the promisor [to] make a will devising a

percentage of his or her estate does not accrue until the death of the promisor." *Id.* Therefore, the court sent the matter back to probate court to determine what amount should be paid to the adult children for their claim. However, before doing so, the court also held that the adult children's third-party rights as determined by the probate court could not affect Constance's right under Fla. Stat. § 732.212, which permitted her to elect against the will. *Id.* at 727. As the court explained, even "[h]ad the children been properly listed as beneficiaries in the will, Constance's elective share would have taken precedence over their bequest." *Id.*

¶ 93. On remand to probate court, the adult children settled their claims with the estate. In so doing, they agreed that after certain payments in favor of Constance, the distribution to them of "the remaining balance of the estate, outright and free of further trust, [is] in full satisfaction of their claim under the Divorce Decree."[3]

¶ 94. On June 8, 2005, the adult children filed a complaint in Dane County Circuit Court against La-Budde, Haberman and Michael Best & Friedrich, alleging numerous intentional torts. Aiding and abetting was asserted against LaBudde, based on the alleged violation of the divorce judgment that LaBudde's drafting of the 1992 will brought about. It is the drafting of the 1992 will that the adult children assert aided and abetted an "unlawful act," i.e., violation of the 1974 divorce judgment.[4]

---

[3] The Settlement Agreement for the Estate of Robert C. Tensfeldt is attached to the affidavit of Robert William Tensfeldt in support of plaintiffs' motion for summary judgment.

[4] Claims were made against Haberman in the complaint, but because I agree with the resolution of those claims by the majority opinion, I do not list them here.

¶ 95. LaBudde, Haberman and Michael Best & Friedrich answered, denying wrongdoing and raising affirmative defenses such as the failure to state a claim on which relief can be granted, statute of limitations, and claim and issue preclusion based on prior judicial proceedings in Florida.

¶ 96. On cross-motions for summary judgment, the circuit court held against LaBudde on the adult children's aiding and abetting claim, on which it concluded that the adult children should prevail as a matter of law. The circuit court based its decision on its conclusion that it was unlawful for LaBudde to draft the 1992 will because it aided Robert in contravening the 1974 judgment that was still effective in 1992. The majority opinion agrees, and it remands only the claim of aiding and abetting the violation of the 1974 divorce judgment to the circuit court for further proceedings.[5]

## II. DISCUSSION

### A. Standard of Review

¶ 97. Whether a court has subject matter jurisdiction to take a particular action is a question of law, requiring independent review. *State v. Smith*, 2005 WI 104, ¶ 20, 283 Wis. 2d 57, 699 N.W.2d 508. Whether a defendant is entitled to qualified immunity under undisputed facts is also a question of law that we decide independently. *Arneson v. Jezwinski*, 225 Wis. 2d 371, 384, 592 N.W.2d 606 (1999). Finally, we independently review as a question of law whether a statute of repose bars an action on a judgment. *Hamilton v. Hamilton*, 2003 WI 50, ¶ 14, 261 Wis. 2d 458, 661 N.W.2d 832.

---

[5] Majority op., ¶¶ 83–84.

## B. Aiding and Abetting

¶ 98. Aiding and abetting is the only claim that the majority opinion sends back to the circuit court for further proceedings.[6] A civil claim for aiding and abetting has two elements: "(1) The person undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) the person consciously desires or intends that his conduct will yield such assistance." *Winslow v. Brown,* 125 Wis. 2d 327, 336, 371 N.W.2d 417 (Ct. App. 1985). According to the majority opinion, the "unlawful act" that LaBudde aided and abetted by drafting Robert's 1992 will is the violation of the 1974 divorce judgment.[7]

## C. The Parties' Positions

¶ 99. LaBudde claims that he did not aid and abet an unlawful act in drafting the 1992 will because Robert's promise was not enforceable as a judgment. LaBudde maintains that the stipulation to make a will was a contractual obligation, as the Florida Court of Appeals concluded.[8] He also contends that he proceeded in a good faith belief that his acts did not assist Robert in violating an enforceable judgment.[9] Furthermore, LaBudde contends that even if the stipulation to make such a will were enforceable against Robert as a judgment when the stipulation was made, it ceased to be enforceable on December 5, 1994, 20 years after the

---

[6] *Id.*

[7] *Id.,* ¶ 3.

[8] Cross-Appellants' brief at 31–32.

[9] *Id.* at 31, 33.

divorce judgment was entered.[10] Therefore, no judgment required Robert to make a will of any type, either in 1999 when Robert reconfirmed the 1992 will, or in 2000 when he died.[11]

¶ 100. The adult children acknowledge that "LaBudde contends that Robert's divorce judgment was unenforceable from its inception."[12] However, the adult children never examine the judgment at its inception. Instead, they rely on dicta of the court of appeals in *Estate of Barnes v. Hall,* 170 Wis. 2d 1, 486 N.W.2d 575 (Ct. App. 1992), wherein the court speculated about possible extensions of our opinion in *Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984).[13] *Barnes,* 170 Wis. 2d at 13. The adult children do not note that *Barnes* specifically examined whether "the statutes in force in 1973 allowed divorcing spouses to agree to some sort of estate planning, as part of the divorce judgment, to benefit their children." *Id.* at 9. *Barnes* concluded that the statutes did not. *Id.* at 10.

D. The 1974 Divorce Judgment

¶ 101. The majority opinion concludes that LaBudde is liable for aiding and abetting an unlawful act based on LaBudde drafting Robert's 1992 will that was subsequently entered into the Florida probate proceedings.[14] The majority opinion concludes that the 20–year statute of limitations on enforceability of judgments had not run when the 1992 will was made. Its focus on

[10] *Id.* at 12.

[11] *Id.*

[12] Cross-Respondents' brief at 19.

[13] *Id.* at 24.

[14] Majority op., ¶ 3.

376

the drafting of the will misses the legal principle on which this case turns. This case requires analyzing whether Robert's stipulation to make a will in favor of the adult children was enforceable as a judgment in 1974.

### 1. Void judgments—general principles

¶ 102. If that portion of the divorce judgment that required Robert to make a will in favor of his then adult children was rendered in excess of the circuit court's subject matter jurisdiction in the divorce action, that part of the judgment is void. 46 Am. Jur. 2d Judgments § 29 (instructing that a judgment is void if it is in excess of a court's subject matter jurisdiction). Contravening a void judgment is not an unlawful act because a void judgment can be lawfully ignored. *Cowie v. Strohmeyer*, 150 Wis. 401, 440, 136 N.W. 956 (1912). Accordingly, LaBudde's drafting the 1992 will contrary to a void provision in the divorce judgment does not support a claim for aiding and abetting because drafting such a will is not aiding and abetting an "unlawful act."

¶ 103. It is black letter law that a "judgment pronounced by a tribunal having no authority to determine the matter in issue is necessarily and incurably void, and may be shown to be so in any collateral or other proceeding in which it is drawn in question." *Fischbeck v. Mielenz,* 162 Wis. 12, 18, 154 N.W. 701 (1916) (quoting 1 Freeman on Judgments, § 120). As we have explained:

> If the court exceeded its jurisdiction of the subject matter, then the judgment is no protection whatever. *It may be ignored altogether.* . . . The rule is elementary, that if the matter dealt with by the judgment in this case was entirely outside of the court's jurisdiction,

then, ... the result was not merely erroneous and so, binding on all parties which the court had jurisdiction of, and their privies, till set aside in some of the ways appointed by law, not including collateral attack, but was a usurpation and ... void in the broadest sense of the term.

*Id.* (emphasis added) (quoting *Cowie,* 150 Wis. at 440–41).

¶ 104. Furthermore, parties cannot create subject matter jurisdiction for a court by waiver, consent or the application of estoppel. As we explained in *Wisconsin's Environmental Decade, Inc. v. Public Service Commission,* 84 Wis. 2d 504, 267 N.W.2d 609 (1978), this has long been the law in Wisconsin:

It is fundamental that parties cannot confer subject matter jurisdiction on a court by their waiver or consent. Sec. 801.04, Stats.; *Gelatt v. DeDakis,* 77 Wis. 2d 578, 584, 254 N.W.2d 171 (1977); *Joint School v. Wisconsin Rapids Ed. Asso.,* 70 Wis. 2d 292, [296–97,] 234 N.W.2d 289 (1975); *Vishnevsky v. U.S.,* 418 F. Supp. 698[, 699 n.2] (E.D. Wis. 1976). Nor can subject matter jurisdiction be conferred by estoppel. *Wisconsin E. R. Bd. v. Lucas,* 3 Wis. 2d 464, [472,] 89 N.W.2d 300 (1958); *State ex rel. Gaudynski v. Pruss,* 233 Wis. 600, [606,] 290 N.W. 289 (1940)....

*Id.* at 515–16.

¶ 105. The subject matter jurisdiction of circuit courts in divorce actions is limited to the authority granted by statute. *Stasey v. Miller,* 168 Wis. 2d 37, 48, 483 N.W.2d 221 (1992). As we have explained, "the jurisdiction [of a circuit court] in divorce actions is entirely dependent on legislative authority." *Id.* (citing *Groh v. Groh,* 110 Wis. 2d 117, 122, 327 N.W.2d 655 (1983)).

¶ 106. When an argument is raised that a portion of a divorce judgment is void for want of jurisdiction, "all that is needed is the determination that, in fact, jurisdiction was not acquired in the proceedings that led up to the entry of the judgment." *West v. West,* 82 Wis. 2d 158, 166, 262 N.W.2d 87 (1978). While circuit court jurisdiction is generally broad, that is not the case when a circuit court sits in a divorce proceeding. *Stasey,* 168 Wis. 2d at 49. In divorce proceedings, the legislature has limited the court's jurisdiction to actions affecting the family, *id.,* which actions are specifically described in the statutes, *id.*[15]

---

[15] The majority opinion concludes that because Wis. Stat. § 247.10 (1973–74) permitted the divorce stipulation that is under review here, that statutory provision expanded the subject matter jurisdiction of the circuit court to comport with the terms of the parties' stipulation. Majority op., ¶¶ 34–35. The majority opinion's conclusion is erroneous for at least two reasons: (1) it ignores at least 69 years of precedent, which uniformly has concluded that subject matter jurisdiction cannot be conferred on a court by agreement of the parties, *see Wisconsin's Environmental Decade, Inc. v. Public Service Commission,* 84 Wis. 2d 504, 515–16, 267 N.W.2d 609 (1978); *State ex rel. Gaudynski v. Pruss,* 233 Wis. 600, 606, 290 N.W. 289 (1940); and (2) it ignores Wis. Stat. § 247.26 (1973–74), which specifically directed to whom property division may be made. Section 247.26 (1973–74) provided that a circuit court sitting in a divorce action "may also finally divide and distribute the estate, both real and personal, of either party *between the parties."* § 247.26 (1973–74) (emphasis added). Nothing in § 247.10 (1973–74) even implies that the division of property in a divorce can be made in favor of one who is not a party to the divorce action, an interpretation that would otherwise trump the explicit directive of § 247.26 (1973–74). Rather, § 247.10 (1973–74) simply permitted the parties to present to the court their agreement on how their property should be divided between them.

## 2. Void provision in the 1974 judgment

¶ 107. Recognizing when a portion of a judgment is void is particularly important in this case because if the will provision in the 1974 judgment is void, then contravening that provision is not an unlawful act. As explained above, if there is an "absence of an express statutory grant of jurisdiction to the circuit court," then that portion of a judgment was made in excess of the court's subject matter jurisdiction, *id.* at 57; and orders made in excess of a court's subject matter jurisdiction are void, *Cowie,* 150 Wis. at 440–41.

¶ 108. Furthermore, "[j]udgments are construed at the time of their entry." *Weston v. Holt,* 157 Wis. 2d 595, 600, 460 N.W.2d 776 (Ct. App. 1990). In 1974, when the divorce judgment was entered, the Jefferson County Circuit Court sitting in the divorce proceedings had not been given jurisdiction by the legislature to order Robert to make a will in favor of the adult children. *Barnes,* 170 Wis. 2d at 13 (concluding that a court in a divorce proceeding did not have a grant from the legislature to take an estate planning action in favor of adult children and suggesting that any remedy was for the legislature, not the courts). *Barnes* interpreted the same version of the Wisconsin divorce statutes as were in effect in 1974 when Ruth and Robert were divorced.

The majority opinion's careless conclusion that a stipulation between the parties can expand the subject matter jurisdiction of a circuit court sitting in divorce is particularly troubling because stipulations continue to be permitted in divorce judgments. Wis. Stat. § 767.251(1) (2007–08). Therefore, the majority opinion's conclusion in this case will affect a dramatic sea change in Wisconsin, if the majority opinion truly means to conclude that parties can expand the subject matter jurisdiction of a circuit court by agreement.

380

¶ 109. In *Barnes*, the court of appeals examined jurisdiction in regard to estate planning for adult children. The court explained that: "The real issue is whether the statutes in force in 1973 allowed divorcing spouses to agree to some sort of estate planning, as part of the divorce judgment, to benefit their children." *Id.* at 9. In reliance on *Vaccaro v. Vaccaro,* 67 Wis. 2d 477, 227 N.W.2d 62 (1975), and ch. 247 of the 1973–74 Wisconsin Statutes, the court concluded that "property division can be made only between husband and wife." *Barnes,* 170 Wis. 2d at 10 (quoting *Vaccaro,* 67 Wis. 2d at 483).

¶ 110. I have independently reviewed the statutes in effect in 1974 when Ruth and Robert were divorced. Chapter 247 of the 1973–74 Wisconsin Statutes contained the legislative grant of authority to circuit courts in "Actions Affecting Marriage." The legislature granted jurisdiction as follows:

> Jurisdiction. (1) The county courts, and circuit courts, . . . have jurisdiction of all actions affecting marriage and of all actions under s. 52.10. . . .[16]

Wis. Stat. § 247.01 (1973–74). Actions affecting marriage were listed with specificity by the legislature:

> Actions affecting marriage. (1) Actions affecting marriage are:
>
> (a) To affirm marriage.
>
> (b) Annulment.
>
> (c) Divorce.
>
> (d) Legal separation (formerly divorce from bed and board).

---

[16] Wisconsin Stat. § 52.10 (1973–74) contained the Revised Uniform Reciprocal Enforcement of Support Act of 1968.

(e) Custody.

(f) For support.

(g) For alimony.

(h) For property division.

Wis. Stat. § 247.03 (1973–74). In regard to property division, the legislature specified that "[t]he court may also finally divide and distribute the estate, both real and personal, of either party *between the parties* and divest and transfer the title of any thereof accordingly." Wis. Stat. § 247.26 (1973–74) (emphasis added).

¶ 111. Property division during a divorce is expressly limited to the parties to the action. The adult children were not parties to Ruth and Robert's divorce action. Therefore, there was no grant of jurisdiction to the divorce court to award the property of either party to the adult children. *Barnes* was correctly decided under the statutes then in effect. The majority opinion's overruling of *Barnes*[17] has no foundation in the statutory grant of authority to circuit courts sitting in divorce proceedings in 1974.

¶ 112. The Jefferson County Circuit Court was without subject matter jurisdiction to order Robert to will two-thirds of his property to his adult children; therefore that part of the judgment is void and of no effect, as a judgment. *Cowie,* 150 Wis. at 440.

¶ 113. One cannot be held in contempt of court for failing to comply with a judgment that has been held to be void. *State v. Ramsay,* 16 Wis. 2d 154, 165, 114 N.W.2d 118 (1962) (citing *State v. Marcus,* 259 Wis. 543, 553, 49 N.W.2d 447 (1951); *Seyfert v. Seyfert,* 201 Wis. 223, 229, 229 N.W. 636 (1930)). "On the other hand,

---

[17] Majority op., ¶ 34.

disobedience of an order made by a court within its jurisdiction and power is a contempt, although the order may be clearly erroneous." *Ramsay,* 16 Wis. 2d at 165 (citing *Wis. Employment Relations Bd. v. Milk & Ice Cream Drivers & Dairy Employees Union,* 238 Wis. 379, 400, 299 N.W. 31 (1941)). Accordingly, violation of a void provision in a judgment cannot be an "unlawful act." *Cowie,* 150 Wis. at 440.

¶ 114. However, the adult children must establish that LaBudde aided and abetted an "unlawful act" in order to meet the first element of their aiding and abetting claim. *Winslow,* 125 Wis. 2d at 336. Because that part of the judgment requiring Robert to will the adult children two-thirds of his net estate is void as a judgment, and Robert's violation of that provision cannot be unlawful, although it has been held to be a breach of contract, the adult children have failed to state a claim for aiding and abetting as a matter of law. Accordingly, that claim should have been dismissed on the cross-motions for summary judgment.

¶ 115. The majority opinion heavily relies on *Bliwas v. Bliwas,* 47 Wis. 2d 635, 178 N.W.2d 35 (1970), to support its argument that the subject matter jurisdiction of a circuit court sitting in divorce proceedings may be expanded by stipulation of the parties under Wis. Stat. § 247.10 (1973–74).[18] However, the majority opinion's reliance on *Bliwas* is misplaced in regard to LaBudde.

¶ 116. In *Bliwas,* the parties entered into a post-judgment stipulation, which was incorporated into a court order, to reduce the amount of child support that Arnold Bliwas would pay for his son's support, in exchange for Arnold's agreeing to contribute to his son's educational expenses beyond the boy's twenty-first birthday. *Id.* at 636–37. Both parties agreed that if there

---

[18] Majority op., ¶¶ 35, 46–48.

had been no stipulation, the divorce court would have been without jurisdiction. *Id.* at 637. However, we did not conclude that the subject matter jurisdiction of the court determined whether the stipulation that was incorporated into a court order would be honored.

¶ 117. To the contrary, in reviewing the legal principles that we would apply, we affirmed the legislative jurisdictional limitation by explaining that a "trial court's jurisdiction to make provisions for the care, custody, maintenance and education of children of the parties is limited to *minor* children." *Id.* (emphasis in original). We did enforce the stipulation, but not because the subject matter jurisdiction of the divorce court had been expanded by agreement of the parties. Rather, we estopped Arnold from making arguments by which to overturn the order that required him to continue to pay support for his son's educational expenses. We explained:

> "[W]here the court disposes of the property of the parties by stipulation in a manner in which it could not have disposed of the property in an adversary proceeding, the general rule applies that a party who procures or consents to the entry of the decree is estopped to question its validity, especially where he has obtained a benefit from it."

*Id.* at 640 (quoting 24 Am. Jur. 2d, *Divorce and Separation,* § 907, at 1030). We also relied on the reasoning of a Kansas decision to further explain:

> "A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment, and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction."

*Id.* at 641 (quoting *Bledsoe v. Seaman,* 95 P. 576, 578–79 (Kan. 1908)).

¶ 118. And finally, we affirmed that " '[t]he parties cannot by stipulation proscribe, *modify* or oust the court of its power to determine the disposition of property, alimony, support, custody, or other matters involved in a divorce proceeding.' " *Id.* at 639 n.4 (emphasis added) (quoting *Miner v. Miner,* 10 Wis. 2d 438, 442–43, 103 N.W.2d 4 (1960)). *Bliwas* never concluded that Wis. Stat. § 247.10 (1973–74) permitted the parties to stipulate to expand the subject matter jurisdiction of the divorce court.[19]

¶ 119. Instead, *Bliwas* turns on the estoppel of a party. That is, Arnold Bliwas was prevented (estopped) from challenging the validity of the order in the first place. In relation to the circumstances of this case, if Robert were alive and trying to avoid an obligation to which he stipulated, *Bliwas* could be raised to estop Robert from arguing that the court did not have subject matter jurisdiction to award the parties' property to non-parties.[20]

---

[19] *Schmitz v. Schmitz,* 70 Wis. 2d 882, 236 N.W.2d 657 (1975), provides further support for my conclusion that the parties to a divorce action cannot stipulate to expand the subject matter jurisdiction of the circuit court. In *Schmitz,* the parties stipulated at the time of the divorce that Harold would pay $15 per week per child until each child reached 21 years of age. *Id.* at 884. Five years later the legislature changed the age of majority to 18. *Id.* Harold stopped paying for those children who had turned 18, and we upheld his decision, notwithstanding the parties' stipulation that Harold pay for each child until the child reached 21. *Id.* at 884, 891. In so concluding, we explained that it was the legislature, not the parties, that established the authority of the circuit court sitting in a divorce. *Id.* at 891.

[20] The majority also cites to *Ross v. Ross,* 149 Wis. 2d 713, 439 N.W.2d 639 (Ct. App. 1989), to support the same arguments it makes using *Bliwas v. Bliwas,* 47 Wis. 2d 635, 178 N.W.2d 35 (1970). Majority op., ¶¶ 49–50. I do not disagree that under

¶ 120. However, LaBudde was not a party to the Tensfeldt divorce. He did not make a promise that he is trying to avoid. Accordingly, there is no basis upon which to estop LaBudde from challenging the estate planning portions of the judgment as being void for lack of circuit court subject matter jurisdiction.[21] Stated otherwise, there is no legal impediment to LaBudde's asserting that the portion of the judgment that attempted to do estate planning for the benefit of the adult children was void from its inception. Our conclusion in *Bliwas* turned on the estoppel of Arnold Bliwas; here, LaBudde cannot be estopped. Therefore, *Bliwas* cannot be applied to preclude LaBudde's defenses to the adult children's aiding and abetting claim.

¶ 121. Furthermore, as the Florida Court of Appeals concluded, Robert's promise is enforceable as a contractual obligation that was not breached until Robert died without a will that was in accord with the

these cases Robert likely could have been estopped from contesting the validity of the provision requiring him to execute a will in favor of his adult children. However, neither of these cases estops *LaBudde* from arguing that that provision of the judgment was void here, and the violation of a void judgment cannot be an unlawful act.

[21] In order to successfully assert estoppel one must address the following:

(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

(2) Did the promise induce such action or forbearance?

(3) Can injustice be avoided only by enforcement of the promise?

*Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965).

stipulation.[22] *Tensfeldt,* 839 So. 2d at 724. The adult children have been fully paid for their third-party contractual rights through the Florida proceedings.[23]

¶ 122. I recognize that appellate courts on occasion have concluded that a circuit court in a divorce action was without statutory authority to enter some portion of the judgment without explaining that that part of the judgment was void because of the restricted jurisdiction of a circuit court in a divorce action. *Barnes* is a good example of that. However, in *Barnes,* there was no need to explain that the lack of subject matter jurisdiction made that part of the divorce judgment void. All that was needed was to determine whether that part of the judgment was enforceable.

¶ 123. By contrast with *Barnes,* our discussion in *Stasey* was more complete, even though all that was needed was to determine whether the portion of the divorce judgment awarding attorney fees as between an

---

[22] A lawyer does not act unlawfully when he assists a client with actions that may breach a contractual obligation of the client. Rather, if the contract of a client is breached, the client pays damages. *Benderson Dev. Co. v. U.S. Postal Serv.,* 998 F.2d 959, 962 (Fed. Cir. 1993) (concluding that the Postal Service, "like any contracting party obtains the right to perform or to breach its contractual obligations"); *30 E. End v. World Steel Prods. Corp.,* 110 N.Y.S.2d 754, 757 (N.Y. Spec. Term 1952) (concluding that the breach of a contract is not "wrongful or unlawful"). Robert's contractual obligations with respect to the adult children have already been litigated, and the adult children have been paid in full for their claim of breach of contract. *See supra* note 3.

[23] The adult children agreed that after certain payments to Constance, the distribution to them of "the remaining balance of the estate, outright and free of further trust, [is] in full satisfaction of their claim under the Divorce Decree." Florida Settlement Agreement for the Estate of Robert C. Tensfeldt.

attorney and client was in excess of the court's subject matter jurisdiction. *Stasey,* 168 Wis. 2d at 39–40. We concluded that the divorce court had exceeded its subject matter jurisdiction. *Id.* at 57. Furthermore, we went on to explain the resulting effect on the portion of the judgment made in excess of the court's subject matter jurisdiction when we said, "We have concluded that that part of the judgment awarding attorney fees is void." *Id.* at 61.

¶ 124. *Stasey* is of significance for the case now before us because here there is a need to understand why the 1974 divorce judgment is not enforceable as a judgment. *Stasey* helps my analysis in two major respects. First, *Stasey* clearly explains that the subject matter jurisdiction of a circuit court sitting in a divorce action is limited to the express grant of authority by the legislature. *Id.* at 48. Second, *Stasey* confirms that when a divorce court acts in excess of its subject matter jurisdiction, that portion of the judgment is void. *Id.* at 61. Because the violation of a void judgment is not an unlawful act, LaBudde did not aid and abet an unlawful act. Accordingly, the aiding and abetting claim against LaBudde should be dismissed.

E. Qualified Immunity

¶ 125. An attorney who acts in a professional capacity has qualified immunity for the actions he takes in assistance of his client. *Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d 220, 242, 517 N.W.2d 658 (1994) (citing *Strid v. Converse,* 111 Wis. 2d 418, 429, 331 N.W.2d 350 (1983); *Goerke v. Vojvodich,* 67 Wis. 2d 102, 105, 226 N.W.2d 211 (1975); *Langen v. Borkowski,* 188 Wis. 277, 301, 206 N.W. 181 (1925)). "An attorney is immune from liability to third parties so long as the

attorney pursues in good faith his or her client's interests on a matter fairly debatable in the law." *Id.*

¶ 126. Here, LaBudde drafted the 1992 will with the good faith belief that a provision in the 1974 judgment was not enforceable as a judgment, but rather, that it was a contractual obligation.[24] It is important for the reader to note that in June of 1992, the court of appeals decided *Barnes,* which concluded that a circuit court has no authority to order estate planning in a divorce judgment. LaBudde drafted Robert's will in November of 1992. Therefore, at the time LaBudde drafted Robert's 1992 will, the most recent decision on whether the estate planning provisions of the divorce judgment were valid was established in *Barnes.* Based on the law then in effect, LaBudde concluded that Robert had only a contractual obligation to make a will bequeathing two-thirds of his estate to his adult children. I agree with that conclusion, as I have explained above.

¶ 127. The majority opinion asserts that "it was not fairly debatable that a client must follow a court judgment."[25] The majority then asserts that "Robert was obligated to follow the court's judgment unless it was modified in a proceeding in the circuit court or on appeal."[26]

¶ 128. The law on one's obligation to follow a judgment to which one is a party is not so absolute as the majority asserts. One does not have an obligation to follow a void provision in a judgment. *Cline v. Whitaker,*

---

[24] Cross-Appellants' brief at 31.

[25] Majority op., ¶ 36.

[26] *Id.,* ¶ 37 (citing *State v. Ramsay,* 16 Wis. 2d 154, 165, 114 N.W.2d 118 (1962) and *Cline v. Whitaker,* 144 Wis. 439, 439, 129 N.W. 400 (1911)).

144 Wis. 439, 442, 129 N.W. 400 (1911). Rather, a void provision may be challenged at any time, in any "proceedings in which it is drawn in question." *Fischbeck,* 162 Wis. at 18. Here, the will provision in the 1974 divorce judgment has been drawn into question. As I have explained above, that provision is void as a judgment, having been made in excess of the circuit court's subject matter jurisdiction. *Stasey,* 168 Wis. 2d at 61. Robert could not be required by contempt proceedings to follow that part of the divorce judgment, unless he were estopped from arguing that the circuit court had no subject matter jurisdiction to order estate planning in favor of the adult children, as we concluded Arnold Bliwas was.[27] *Cowie,* 150 Wis. at 440–41. The provision could also be enforced as a contract provision, as was done in the Florida courts. *Tensfeldt,* 839 So. 2d at 722.[28] The law in regard to the effect of void judgments and *Barnes'* recently released conclusion provided La-Budde with at least a good faith belief that assisting Robert in the estate plan he chose was not aiding and abetting an unlawful act, although LaBudde may have been assisting a breach of contract.[29] In my view, it is patently unfair of the majority opinion to overrule *Barnes,* which was decided only a few months before

---

[27] In *Bliwas,* we estopped Arnold Bliwas from contesting the validity of the order that incorporated his stipulation. *Bliwas,* 47 Wis. 2d at 640.

[28] As explained above, LaBudde had advised Robert that the stipulation created only a contractual obligation.

[29] As I explained above, breaching a contract is not committing an illegal act. When one breaches a contract, one pays damages. *See supra* note 22. Paying damages for the breach of a contract to make a will is what the Florida court ordered. *Tensfeldt v. Tensfeldt,* 839 So. 2d 720, 721–22 (Fla. Dist. Ct. App. 2003).

LaBudde drafted the 1992 will, and then to declare there was no law on which LaBudde could have based a good faith belief that he assisted Robert only in a potential breach of contract.

¶ 129. The majority opinion cites *Ramsey* and *Cline*.[30] However, those cases do not support the position the majority opinion has taken. In *Ramsey*, we examined Wis. Stat. § 256.03(3) (1961–62), which provides:

> Every court of record shall have power to punish, as for a criminal contempt, persons guilty of either of the following acts and no other:
>
> . . .
>
> (3) Wilful disobedience of any process or order *lawfully issued or made* by it.

(Emphasis added.) We explained that § 256.03(3) was a codification of the common law. *Ramsey*, 16 Wis. 2d at 165. In our discussion of the common law, and therefore our interpretation of § 256.03(3), we further explained that the first order of business was to determine whether the court order had been "lawfully issued or made." *Id.* We explained that this was important because "[t]he universal rule is that the failure of a person to obey an order that [a court has held] is void for want of jurisdiction in the issuing court is not punishable as contempt." *Id.* (citations omitted).

¶ 130. I agree that the first question to be addressed when it is claimed that a court order has been violated is whether the court that made the order had

---

[30] Majority op., ¶ 37.

subject matter jurisdiction to do so.[31] Because the divorce court did not have subject matter jurisdiction to order Robert to maintain a will leaving two-thirds of his net estate to the adult children, *Ramsey* actually supports my position that Robert did not act unlawfully when he did not comply with that portion of the divorce judgment. Therefore, LaBudde's drafting of the 1992 will did not aid and abet an unlawful act. *Cline* is similar to *Ramsey,* in that its discussion is qualified by first providing that the court must have subject matter jurisdiction to enter a lawful order. *Cline,* 144 Wis. at 442.

¶ 131. It has been LaBudde's position throughout these proceedings that the will provision in the 1974 divorce judgment was unenforceable as a judgment, from its inception.[32] Certainly, given the many cases cited above, LaBudde had at least a good faith belief

---

[31] The majority opinion says, "there is no claim that the divorce court lacked jurisdiction." *Id.,* ¶ 42. It also opines that "[e]ven if LaBudde believed that the judgment exceeded the divorce court's authority under the 1974 statutes, the only lawful courses of action were to follow the judgment, to ask the court to modify it, or to appeal the judgment." *Id.* With all due respect, the majority opinion is wrong on the facts and on the law. LaBudde has consistently maintained that the divorce court was without power to order Robert to maintain a will in favor of the adult children, and that Robert's obligation to the adult children was contractual in nature. Furthermore, the law in Wisconsin does not require compliance with a void judgment. *Ramsey,* 16 Wis. 2d at 165.

[32] Cross-Appellant's brief at 35–36. The majority opinion asserts that the word "void" does not appear in LaBudde's brief. Majority op., ¶ 43 n.19. However, "void" is an apt term to describe a judgment that was unenforceable as a judgment from its inception, as LaBudde asserts here. *Stasey v. Miller,* 168 Wis. 2d 37, 61, 483 N.W.2d 221 (1992).

that his assistance to Robert did not violate a lawful provision of the divorce judgment. Therefore, I conclude that LaBudde has immunity from liability for the legal representation he provided.

### F. Statute of Repose

¶ 132. The majority leaves open the question of what statute of limitations applies to LaBudde's act of drafting the 1992 will.[33] I leave that question unaddressed as well. However, I write to point out that even if I were to assume, arguendo, that drafting the 1992 will aided and abetted an unlawful act, Robert reconfirmed that will in 1999. On December 6, 1994, 20 years after the judgment was entered, the 20–year statute of repose found in Wis. Stat. § 893.40 established a bar to an action to enforce the judgment. *Hamilton,* 261 Wis. 2d 458, ¶ 27.

¶ 133. LaBudde raises Wis. Stat. § 893.40 as a bar to the adult children's claims.[34] Section 893.40 provides:

> Action on judgment or decree; court of record. Except as provided in ss. 846.04(2) and (3) and 893.415, action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred.[35]

¶ 134. In *Hamilton,* we addressed Wis. Stat. § 893.40 relative to a divorce judgment. We were asked

---

[33] Majority op., ¶ 58.

[34] Cross-Appellants' brief at 12, 32.

[35] Wisconsin Stat. § 846.04 applies to mortgage foreclosures and Wis. Stat. § 893.415 applies to actions to collect child support or family support. Neither provision has any relevance to the claims of the adult children.

to examine whether the State, as the real party in interest, could seek to collect unpaid child support on a divorce judgment entered in 1970 and modified in 1977, through an action the State commenced May 22, 2000. *Hamilton,* 261 Wis. 2d 458, ¶ 15. In order to answer that question, we examined § 893.40, which we concluded was a statute of repose, rather than a statute of limitations. *Id.,* ¶ 28.

¶ 135. We explained that "[s]tatutes of repose operate differently from statutes of limitations. A statute of limitations usually establishes the time frame within which a claim must be initiated after a cause of action actually accrues." *Id.,* ¶ 29 (citing *Aicher v. Wis. Patients Comp. Fund,* 2000 WI 98, ¶ 26, 237 Wis. 2d 99, 613 N.W.2d 849). We contrasted this with the operation of a statute of repose, which actually "limits the time period within which an action may be brought based on the date of an act or omission." *Id.* Most importantly for my analysis here, we explained that "[a] statute of repose does not relate to the accrual of a cause of action. In fact, it may cut off litigation *before* a cause of action arises." *Id.* (emphasis in original). We also explained that the "act" that triggers Wis. Stat. § 893.40 is the entry of the judgment. *Id.*

¶ 136. In the adult children's aiding and abetting action, they necessarily seek to enforce the terms of the divorce judgment because their damages for aiding and abetting are dependent on their recovery had the judgment been enforceable. That is, there can be no recovery for aiding and abetting if there can be no recovery for violation of the divorce judgment. 74 Am. Jur. 2d Torts § 60 (instructing that "[o]ne who . . . aids[] or abets a wrongful act by another is regarded as being as responsible as the one who commits the act, so as to impose liability upon the former to the same extent as

394

if he had performed the act himself"); *see also, e.g.,
Abramian v. President & Fellows of Harvard College,*
731 N.E.2d 1075, 1088 (Mass. 2000) (concluding that
because the underlying claim was dismissed, the aiding
and abetting claim based on that underlying claim could
not be maintained); *Tate v. Dep't of Mental Health,* 645
N.E.2d 1159, 1164 n.2 (Mass. 1995) (explaining that
because "plaintiff would not be able to satisfy her burden
of proof that the Association discriminated . . . summary
judgment should be granted on the plaintiff's claim that
the department and the commission aided and condoned
the actions of the Association"). LaBudde, by aiding and
abetting Robert, can be no more liable than Robert
himself would be. Therefore, because Wis. Stat. § 893.40
bars enforcement of the judgment against Robert subse-
quent to December 5, 1994, the claim for aiding and
abetting is necessarily barred as well.

¶ 137. The act that started the running of Wis.
Stat. § 893.40's statute of repose was the entry of the
divorce judgment on December 5, 1974. *Id.* Accordingly,
no action could be brought to enforce the terms of the
judgment, as a judgment, after December 5, 1994. In
1999, Robert reaffirmed the will that was probated at
his death in 2000. At that time, Robert was no longer
constrained by the judgment, as a judgment, in regard
to what posthumous distribution he chose for his prop-
erty. As we have noted throughout, Robert had contrac-
tual obligations that remained. However, those obliga-
tions were litigated and payment was made for them in
the Florida probate proceedings. Accordingly, the adult
children's action now before us is precluded by § 893.40.

### III. CONCLUSION

¶ 138. I write separately for three reasons: (1) I
conclude that the plaintiffs' claim against LaBudde,

based on aiding and abetting Robert in allegedly violating a provision of a 1974 divorce judgment that required him to will two-thirds of his net estate to his three adult children, fails to state a claim on which relief can be granted because the estate planning provision of the divorce judgment exceeded the circuit court's subject matter jurisdiction; (2) I conclude that LaBudde was immune from liability in drafting Robert's 1992 will because LaBudde proceeded in a good faith belief that the provision in the 1974 divorce judgment that required estate planning in favor of the adult children was void from its inception, as a judgment; and (3) I conclude that even if I were to assume, arguendo, that the directive to make a will in the 1974 divorce judgment were enforceable when made, Wis. Stat. § 893.40, a 20–year statute of repose, precluded actions on the divorce judgment after December 5, 1994. Therefore, the divorce judgment had no effect, as a judgment, in 1999 when Robert reaffirmed the will that he made in 1992, and it had no effect at his death in 2000. As a result, the aiding and abetting claim against LaBudde must be dismissed. Because the majority opinion concludes otherwise, I respectfully dissent from that portion of the majority opinion that addresses the aiding and abetting claim.

¶ 139. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence/dissent.